## UNITED STATES ex rel. GILETTI v. COMMISSIONER OF IMMIGRATION, ELLIS ISLAND, NEW YORK HARBOR.

Circuit Court of Appeals, Second Circuit. November 4, 1929.

No. 133.

Shorr Brodsky & King (Isaac Shorr and Carol Weiss King, of New York City), for appellant.

Charles H. Tuttle, U. S. Atty. (Edward Feldman, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge. The relator, an Italian, having embarked at Naples, entered the United States on August 16, 1923, as one of the Italian quota. On December 7, 1927, he was convicted in the County Court of Bronx County, New York, for assault in the second degree, and was sentenced to a term of imprisonment from 1½ to 5 years; the crime being that he shot another Italian, apparently in a political brawl between Fascists and anti-Fascists. He does not challenge the validity of the deportation, which was because within five years he had been convicted of a crime involving moral turpitude and imprisoned for a term of more than one year, but he wishes to be allowed voluntarily to leave for some other country than Italy. This is because his violent and open opposition to the Fascist régime has already brought him to the notice of the authorities, and will, as he fears, expose him to imprisonment, and perhaps to violence, when he arrives. His theory on the law is that section 1(b) of the Act of March 4, 1929, as amended on June 24, 1929 (U. S. C. title 8, § 180 [8 USCA § 180]), gives to the Secretary of Labor power to allow him to leave voluntarily, and that it was an abuse of discretion, which the District Court may review, to send him back to Italy.

Section 20 of the Act of February 5, 1917 (U. S. C. title 8, § 156 [8 USCA § 156]), directs the Secretary to deport aliens who are ordered deported "to the country whence they came or to the foreign port at which such aliens embarked for the United States"; this at his "option." In United States ex rel. Karamian v. Curran, 16 F. (2d) 958, we held—as we had done before—that the writ reviewed the destination to which the alien was consigned, and we further added that the order of deportation should select one of the countries prescribed by the statute, and not leave it open to the alien to leave voluntarily for another. Section 1(b) of the Act of March 4, 1929, as amended by Act June 24, 1929, provides, however, that an alien "ordered deported" shall be deemed to have been so deported, if he "has left the United States, * * * irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." The argument is that this gave countenance to a practice, which we are told has long existed, by which the Secretary in his discretion allows the order to remain unexecuted, if the alien voluntarily leaves for another country of his choice and at his own expense. Section 20 of the Act of February 5, 1917, may then be understood as meaning only that, when deported in invitum, the alien must go to one of the prescribed countries, but it need not be executed, when the same result is accomplished by his going elsewhere.

This appears to us certainly a humane construction to put upon the statute, and we will not say that it is too much of a strain upon its language. The facts at bar do not appear to us to call for a decision. In the first place, it is by no means clear that we have the power to review the action of the Secretary, assuming that he has the added option. Lazzaro v. Weedin, 4 F.(2d) 704 (C. C. A. 9), uses equivocal language, and may have meant no more than that the destination in the order was within the terms of the statute. MacKusick v. Johnson, 3 F.(2d) 398 (C. C. A. 1), and Caranica v. Nagle, 28 F.(2d) 955 (C. C. A. 9), can hardly be thought to be decisions on the question, though Hajdamacha v. Karnuth (D. C.) 23 F.(2d) 956, is against the relator.

Moreover, assuming that we have a power of review, the record contains no evidence to show that the Secretary has abused his discretion. The relator does not say where he wishes to go, or whether he would be admitted, if he chose another country. It does not further appear that he can secure transportation at his own cost, or, if all these conditions were fulfilled, that the country

selected would be one which was remote enough to insure against his reentry. Without these facts, plainly we have no means of saying that the Secretary ought not to send him to Italy.

■ ■ Therefore we must affirm the order, even if we take all the law in the relator's favor. All we can do, as we did in United States ex rel. Karamian v. Curran, is to suggest that if it prove possible, it would seem most desirable that he be allowed to go elsewhere. The record does show that by his conduct here he has apparently exposed himself to criminal prosecution in Italy, for which he is subject to an imprisonment of between 5 and 15 years. His offenses are apparently political, for which he could not be extradited. True, this does not prevent us from ridding ourselves of his presence for crimes committed here, but it has been our traditional policy from the outset not to assist in the prosecution of political offenses, and it would seem to be a corollary that, when the choice is open, we should not make it an incident of the execution of our own laws that the offender should be subjected to the discipline of another country for crimes of that character. The occasion would therefore seem to be one in which the utmost latitude might properly be given him, consonant with law, to escape these consequences.

Further, while we cannot, of course, say how much ground there may be for his fear of violence, there can be no reasonable doubt that that fear is real, and that alone is a severe penalty.

Order affirmed.