**UNITED STATES ex rel. SALVETTI et al. v. REIMER, Commissioner of Immigration and Naturalization.**

No. 317.

Circuit Court of Appeals, Second Circuit.

May 1, 1939.

Gaspare M. Cusumano, of New York City, for appellants.

John T. Cahill, U. S. Atty., of New York City (Clifford H. Rich, Asst. U. S.

Atty., of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The appellants, husband and wife, were taken into custody under warrants ordering their deportation to Italy. They admit that they are aliens of Italian origin who are here illegally. The husband entered as a seaman in 1927 and promptly deserted his ship; his wife was admitted in 1928 as a temporary visitor for a period of three months. Her intention was to remain permanently and she did not try to obtain an immigration visa because she knew her husband to be here illegally. They have both remained in this country continuously since their respective entries, and have had a child born to them here. After hearings before an immigration inspector, they appealed to the board of review, which ordered deportation; warrants of deportation were issued on June 27, 1938. Thereafter they requested that the warrants be withdrawn and permission be granted them to depart voluntarily at their own expense in order that they might reenter legally without complying with the more onerous conditions incident to legal reentry after deportation. Denial by the board of review of this request is the basis of their resort to the court for a writ of habeas corpus.

The appellants contend that the Department of Labor has established an administrative practice of permitting aliens illegally here, who are of good moral character and the parents of a child born in the United States, to depart voluntarily rather than under a warrant of deportation; that since the appellants are within the class usually accorded such privilege, the denial of it to them is an abuse of discretion; and that in denying the privilege the board of review considered false accusations against Francesco Salvetti which the appellants were given no opportunity to refute, and consequently they were deprived of a fair hearing.

From the Annual Report of the Secretary of Labor for 1938 it appears that during that fiscal year 9,275 aliens were deported under warrants of deportation, while 9,278 aliens who had been adjudged deportable were allowed to depart at their own expense without a warrant of deporta-

tion. At page 102 the Report states: "Aliens found subject to deportation on other than criminal, immoral, or radical grounds, or because of mental or physical defects, who are able and willing to leave the country without expense to the Service are often accorded that privilege. In such cases the alien's removal from the country is as effectively accomplished as if actual deportation occurred, and he is not debarred from applying immediately for readmission if the basis of his deportable status is technical and does not involve any element of bad moral character which might disqualify him from readmission."

A similar statement appears in the Annual Report for 1937; and from earlier Reports it appears that the administrative practice is at least of ten years standing. No regulation respecting the practice has been promulgated, but we think it clear from the Annual Reports and from the record in this case that the Secretary of Labor, through the board of review, has established a practice of considering the request of an alien who has been ordered deported, to be accorded the privilege of departing voluntarily, and in many instances has granted such requests. There seems to be no express statutory basis for such practice. In United States ex rel. Giletti v. Commissioner, 2 Cir., 35 F.2d 687 the argument was advanced that section 1(b) of the Act of March 4, 1929, as amended on June 24, 1929, 8 U.S.C.A. § 180 (b), impliedly gives the Secretary of Labor power to allow an alien to leave voluntarily; hence section 20 of the Act of February 5, 1917, 8 U.S.C.A. § 156, may be understood as meaning that, when deported in invitum, he must be sent to one of the countries therein prescribed, but the order of deportation may remain unexecuted when the alien's removal is accomplished by his going elsewhere voluntarily. This court there said (35 F.2d page 688): "This appears to us certainly a humane construction to put upon the statute, and we will not say that it is too much of a strain upon its language. The facts at bar do not appear to us to call for a decision."

■ In the present case we shall assume that it is within the legal power of the Secretary of Labor, in whom Congress has vested the deportation of aliens, 8 U.S.C.A. §§ 155, 156, 214, to accomplish their removal by withdrawing the warrants of deportation and granting the privilege of voluntary departure. But the granting or denial of such

privilege is of necessity a matter resting in his discretion. See Ex parte Panagopoulos, D.C.S.D.Cal., 3 F.Supp. 222, 223; Fafalios v. Doak, 60 App.D.C. 215, 50 F.2d 640. With respect to discretionary powers expressly conferred upon the Secretary, it has been frequently held in this circuit that his decision is not reviewable by the courts. United States ex rel. Chanin v. Williams, 2 Cir., 177 F. 689; United States ex rel. Ickowicz v. Day, 2 Cir., 18 F.2d 962; United States ex rel. Frumcair v. Reimer, D.C.S.D.N.Y., 25 F.Supp. 552, 554. Clearly, the exercise of a discretionary power conferred by implication must be equally final. See United States ex rel. Mazur v. Commissioner, 2 Cir., 101 F.2d 707, 708.

Moreover, even if it be assumed that in a clear case of abuse of discretion, the courts have a power of review, we do not find in the present record evidence of such abuse. The appellants contend that the privilege of voluntary departure was denied them because the board of review acted upon false accusations which they had no opportunity to refute. This contention is based chiefly upon Exhibit 18, which is a "Memorandum for the Commissioner" dated October 25, 1938. After referring to the aliens' request to be granted leave to depart without an order of deportation outstanding against them, and after mentioning accusations contained in a letter filed by former associates of the male alien as well as commendatory letters filed by his attorney, the memorandum continues as follows:

"The Board is unable solely on the record now before it to determine whether or not the aliens are deserving of the privilege which is asked in their behalf. If the male alien has a criminal record, he should be deported. If the complaint made in the case is merely a biased one and untrue, the alien should not be singled out as not deserving the treatment usually given to aliens having a citizen child. To decide properly what should be done in a case such as this, an investigation is necessary.

"The investigation would in this and similar cases involve the Service in expenses relative to matters not germane to the question of deportability. Therefore, it is deemed important to inquire whether the Board should make necessary such expenditures by requesting such investigations, or whether the position should be taken that where complaints are made derogatory to aliens in deportation proceedings, deportation will be proceeded with unless it is affirmatively shown by the aliens, without the necessity of an investigation by the Service, that there is no basis to the complaints. It will not be overlooked that the latter action renders possible the denial of leniency to some who otherwise would receive it even perhaps unfairly and upon biased complaints.

"L. Paul Winings
"L. Paul Winings, Chairman.
"I think that as there is no hardship or separating of this immediate family we had better deport.

"JWH"

But the board's decision was not rested on the accusations referred to in the memorandum. On October 26, 1938, on "further consideration [of the] warrant proceedings," the board denied the aliens' request in an opinion which mentions that the aliens purposely evaded the immigration laws at the time of their entry and that "No particular hardship as to them is present in the case which would warrant taking the lenient action called for." Thereafter the aliens' attorney renewed the request in a letter which advanced refutation of the accusations that had been made against the male alien. On November 25, 1938, the board of review again declined to withdraw the warrants of deportation on the ground that "The removal of this family will create no hardship nor separate a family and, therefore, there appears to be no grounds for changing previous order."

Thus the board's decision was not rested on the accusations; nor was the aliens' attorney kept in ignorance of them. His letter of October 31, 1938, Exhibit 20, explains their bias and falsity. We may assume, without the necessity of decision, that the requirements of a fair hearing must be observed by the board during its consideration of the aliens' request and that a decision based on charges which they had no opportunity to refute would be unfair. Cf. Chew Hoy Quong v. White, 9 Cir., 249 F. 869. But there was no unfairness here; the aliens were allowed to meet the accusations with the same character of evidence as that supporting them, namely, letters; and they asked for nothing more. Moreover, the final action of the board was not put upon any lack of proof by the aliens of their moral character but on the ground that no hardship and no separation of the family would result from deportation.

We cannot say that in reaching this decision the Secretary abused the discretion vested in him to deport the aliens instead of granting their request for voluntary departure. So far as appears all other aliens in like case with the appellants have been similarly treated. No departmental regulation lays down the conditions on which the privilege will be granted. The statements in the Annual Reports that the privilege is "often" or "usually" accorded to aliens whose deportable status is technical and does not involve any element of bad moral character, cannot be treated as defining the only factors thât the Secretary may take into account in exercising his discretionary power. When he refuses to grant the privilege because deportation will not result in hardship or in separating members of the family, we cannot hold that he has abused his discretion, even though we entertain a different view as to the hardship involved.

Order affirmed.

CLARK, Circuit Judge (concurring).

Because of doubt how far we can or should interfere with the Secretary's refusal to permit a deportable alien to leave the country voluntarily and because the final action of the board of review is based on broad grounds of discretion, I concur in the order of affirmance, although I am disturbed by the reasons assigned for the refusal in the original memorandum of the board's chairman (that of October 25, 1938). Here, after saying that, if the complaint made against the alien was biased and untrue, "the alien should not be singled out as not deserving the treatment usually given to aliens having a citizen child," he apparently recommends that no investigation be made because of the expense involved. And he suggests that in cases where complaints are made derogatory to aliens "they must affirmatively show there is no basis to the complaints." Had this been the sole basis of refusal, I think the result would have been unfortunate. It would give to scheming and malicious persons too great an opportunity—by merely mailing a letter—to prejudice the alien most seriously in securing a privilege of great practical value to him. It does not befit the Government—if it is to allow unsupported letters to affect its decision—to say it will not look behind them because of the expense involved, particularly when, as here, there is a strong showing by the alien in rebuttal. What more could an alien show "affirmatively"? He produced not only supporting letters, but a full explanation, offered by his attorney, of his business relations with the writers of the letters. And he showed an executed agreement of final adjustment of all their business affairs. That this agreement disclosed their obligation to pay him a sum of money in installments over a period of ten months did not make their desire for his deportation seem more disinterested.

The parties were known. They were in or near New York City. There would have been slight cost in bringing them face to face before a responsible government official and thus testing the real nature of the complaints. A decision made after such oral confrontation of the parties would be entitled to respect. I think the Secretary should go this far in cases where, except for accusing letters, she is prepared to grant the privilege of voluntary withdrawal. As the opinion points out, however, the final decision of the board itself is rested on other grounds.