**UNITED STATES ex rel. ZELLER v. WATKINS, District Director of Immigration and Naturalization.**

**No. 192, Docket 20900.**

Circuit Court of Appeals, Second Circuit.

April 13, 1948.

Gunther Jacobson, of New York City, for appellant.

John F. X. McGohey, U. S. Atty., of New York City (Harold J. Raby, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the relator-appellant is removable under the Alien Enemy Act, 50 U.S.C.A. § 21, as a "native, citizen, denizen or subject" of Germany.

He was born in 1914 in the City of Danzig which was then a part of Germany. In 1920, under the Treaty of Versailles Danzig became a Free City. In 1936 the appellant came to the United States under a Danzig passport and on the Danzig quota; he was legally admitted as an immigrant and has continued to reside here ever since. In 1943 he was interned as an alien enemy and thereafter, by order of the Attorney General dated January 11, 1946, was ordered to depart from the United States within 30 days and in default thereof to be removed to Germany by the Commissioner of Immigration. He was in custody of the respondent at Ellis Island when the present proceeding was initiated by issuance of a writ of habeas corpus. After a plenary hearing the writ was dismissed.

The respondent argued in the court below, and repeats the contention here, that the appellant is a "native" of Germany because born in Danzig at a time when that city was part of the German Empire. In United States ex rel. Gregoire v. Watkins, 2 Cir., 164 F.2d 137 we held that whether an alien is a "native of a hostile nation or government" depends upon whether his birthplace is within the boundaries of a nation hostile or friendly at the time of his arrest for internment. Although the Free City of Danzig was re-annexed to Germany in 1939, the United States has never recognized its conquest and annexation by Germany.[1] Hence at the time of the appellant's arrest for internment in 1943 Danzig was still regarded as a friendly nation or government, and the Gregoire case precludes his removal to Germany as a "native" of a hostile nation.

The district court held that the appellant was a "citizen" of Germany within the meaning of the Alien Enemy Act because he had elected to become such after the Germans had overrun and annexed Danzig in the autumn of 1939. In United States ex rel. Schwarzkopf v. Uhl, 2 Cir., 137 F.2d 898, we stated that while an annexing nation could not impose its citizenship on absent nationals of the conquered country, such persons could become citizens of the annexing power by their own consent or election. The appellant argues that on the assumption that he could make himself a German citizen by election, the evidence is insufficient to sustain the court's finding that he did so elect. On the contrary we think it ample.

In his application for a certificate of identification dated February 28, 1942, the appellant stated under oath that he was a "citizen or subject" of Germany. On March 2, 1943 he wrote to his local draft board that he was an "alien and a citizen of Germany." This was repeated in his Alien Personal History Statement and his Alien Enemy Questionnaire, and it was on this ground that he objected to service in the armed forces of the United States. In the Questionnaire the appellant stated that he had registered with the German Consulate

---

[1] In March 1945 Danzig was liberated by the Russians; under the Potsdam Declaration Danzig was placed under Polish administration, subject to final disposition by the peace settlement.

in New York in September 1939 for military service with the German army. According to testimony of F.B.I. agent Ferrara the appellant told him that he had volunteered for military service at the German Consulate in New York. When questioned as to making such statement the appellant replied "I don't remember." He admitted telling Ferrara that he refused to bear arms for the United States. During internment as an alien enemy he received subsistence allowances from the German government. On January 23, 1945 he requested repatriation to Germany as a German national. Subsequently this request was withdrawn.

▉ The appellant would have us believe that being ignorant of the legal complexities involved in the determination of "citizenship" and "nationality" he was misled into thinking himself a German citizen by what a government employee in the post office told him when he filled out his application for a certificate of identification in 1942, and that this mistake persisted in all his later declarations of German citizenship so that they should be considered erroneous expressions of opinion rather than acts evidencing an intentional election of German citizenship. This presents a question of fact. The district judge evidently did not credit this explanation, and we cannot say that the court's finding of election was clearly erroneous. Within the doctrine of United States ex rel. Schwarzkopf v. Uhl, 2 Cir., 137 F.2d 898, 902 and United States ex rel. Reichel v. Carusi, 3 Cir., 157 F.2d 732, 733, certiorari denied 330 U. S. 842, 67 S.Ct. 1081, the appellant elected German citizenship.

▉ The appellant disputes our conclusion on two grounds. He argues that since the United States has never recognized the re-annexation of Danzig by Germany that act of conquest is a nullity in law and cannot legally result in conferring German citizenship upon him even with his consent. But the recognition or non-recognition by our Government is irrelevant to the question of election of citizenship in the foreign nation, as was pointed out in the Schwarz-

kopf case, 137 F.2d at page 901. See also United States ex rel. Reichel v. Carusi, supra, 157 F.2d at page 733. Election is a voluntary act by the alien evidencing acceptance by him of an offer of citizenship by the foreign country. On that issue it is immaterial whether or not the United States recognizes the German conquest of Danzig.

▉ It is also argued that the German Law of September 1, 1939,[2] re-annexing Danzig, offered citizenship to Danzigers only upon conditions which were thereafter to be determined but never were. Article III of section 1 provided: "The Free City of Danzig shall constitute with immediate effect, together with its territory and population, a component part of the German Reich." Section 2 of the Law provided: "The nationals of the hitherto existing Free City of Danzig shall be German Nationals in accordance with more detailed provisions." Counsel for both parties have been unable to discover any such "more detailed provisions." Consequently the appellant urges that the statute states only a general policy and affords no proof that nonresident Danzigers could become German citizens by election. But we cannot doubt that it was the intention of Germany to absorb as nationals former Danzigers despite lack of "more detailed provisions." And we think clear evidence of this with respect to the relator is found in the subsistence payments made by Germany to him while he was interned as an alien enemy. Administrative support for this conclusion may be found in a pamphlet entitled "United States Department of Justice, Washington, D. C. Questions and Answers on Regulations concerning Aliens of Enemy Nationalities," which states that former residents of Danzig, the Sudetenland, and Slovakia "are not considered alien enemies unless they voluntarily became or acted as citizens or subjects of Germany, Italy or Japan, or registered as citizens or subjects of any of those countries under the Alien Registration Act of 1940 [8 U.S.C.A. §§ 137, 155, 156a, 451–460, 18 U.S.C.A. §§ 9–13]."

---

[2] The German text of the act appears in The Law Gazette of the German Government, Reichsgesetzblatt, Part I, of 1939, pp. 1547-8. An English translation is in the record.

■ The appellant makes further objection to removal on the ground that he has not been given proper opportunity to leave the United States in accordance with the Act of July 6, 1798 as amended, 50 U.S.C.A. § 22 and the applicable regulations.[3] However, he admits receipt of the removal order in June, 1946 and admits having had 30 days thereafter in which to "arrange my personal affairs so I could be moved from the United States." This 30 day·period was the time the Attorney General deemed reasonable in accordance with his discretionary powers and is not subject to review by this court. See United States ex rel. Salvetti v. Reimer, 2 Cir., 103 F.2d 777, 779. But the appellant asserts that he was unable to leave the United States without an exit permit, which he did not have, required by the State Department.[4] Since the applicable regulations require that the alien desiring to depart must apply on his own initiative for such a permit and there is nothing in the record to indicate that the appellant made any such application, it may be that he should be precluded from raising the point. But in any case we believe that in the circumstances here presented no exit permit of this kind was required. The removal power of the Attorney General is derived from the presidential proclamation issued pursuant to 50 U.S.C.A. § 21. Proc. No. 2655, July 14, 1945, 3 CFR, 1945 Supp., page 29. The Proclamation, signed by the Secretary of State, provides that all alien enemies deemed dangerous by the Attorney General shall be subject "upon the order of the Attorney General to removal from the United States and may be required to depart therefrom in accordance with such regulations as he may prescribe." Section 175.30(a) of the State Department exit regulations permits the State Department to allow the departure of any alien without an exit permit with the concurrence of the Attorney General.[5] We believe that removal of aliens pursuant to the Proclamation is included within the exceptions of this section. Read in any other way the State Department Regulations would prohibit the departure of dangerous alien enemies ordered to leave by the Attorney General pursuant to a presidential proclamation signed by the Secretary of State.

■ Finally, the appellant objects to being sent to Germany, insisting that he should be returned to Danzig, the place of his birth. The applicable regulations pursuant to 50 U.S.C.A. § 21 and Presidential Proclamation No. 2655 provide that an alien enemy subject to removal will be returned to the "territory of the country of which he is a native, citizen, denizen or subject." Section 30.72, Attorney General Regulations, Removal of Alien Enemies from the United States.[6] The appellant has been judicially declared a citizen of Germany, and under the quoted regulation the Attorney General may order him removed to the country of his allegiance.

Judgment affirmed.

---

[3] The regulations pursuant to this section provide for a thirty-day period for "voluntary departure" and for forcible removal in the event the alien enemy "fails or neglects" to depart within that period. Attorney General Regs., Removal of Alien Enemies from the United States, 28 CFR, 1945 Supp., 30.71-30.75.

[4] Section 175.22 of the applicable State Department Regulations provides in part: "No alien shall hereafter depart from the United States * * * unless there has been issued in accordance with §§ 175.21 to 175.31, inclusive, a valid permit to depart, or unless ·he is exempted under §§ 175.21 to 175.31, inclusive, from obtaining a permit to depart."

Section 175.31 provides that "Any alien in whose case a permit to depart is required, desiring to depart from the United States, shall apply to the Secretary of State, or to such officer as may be designated, for a permit to depart. * * *" 8 CFR, 1945 Supp., pages 807, 809.

[5] Section 175.30(a). "Notwithstanding the provisions of §§ 175.21 to 175.31, inclusive, the Secretary of State may, in his discretion, authorize the issuance of a permit to depart to any alien, or may allow any alien to depart without such permit if he deems such action to be in the interests of the United States: Provided, that any such authorization which may be applicable to aliens of a particular class shall be concurred in by the Attorney General." 8 CFR, 1945 Supp., page 809.

[6] 28 CFR, 1945 Supp., page 2815.