## UNITED STATES ex rel. WEDDEKE v. WATKINS.

No. 145, Docket 20869.

Circuit Court of Appeals, Second Circuit.
Feb. 4, 1948.

Writ of Certiorari Denied April 19, 1948.
See 68 S.Ct. 904.

Gunther Jacobson, of New York City, for appellant.

John F. X. McGohey, U. S. Atty., of New York City (William J. Sexton, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee.

Before AUGUSTUS N. HAND, CLARK and MAGRUDER, Circuit Judges.

MAGRUDER, Circuit Judge.

Frederick Heinrich Weddeke sought, by a petition for a writ of habeas corpus filed on his behalf in the court below, to challenge the legality of his detention under a warrant of deportation. A writ was issued, and respondent made a return thereto, to which a traverse was filed. Argument on the pleadings was had in motion session, after which the District Judge, from the bench, directed the entry of an order dismissing the writ and remanding relator to custody. At the argument before us on appeal, counsel for respondent offered for our inspection the administrative file of the Immigration and Naturalization Service. Appellant objected to our consideration of the contents of this file on the ground that it was not part of the record before the District Judge and did not influence the decision below. The return to the writ recites certain facts as appearing "by the records of the Department of Justice of the United States with respect to the above-named alien, which records are in possession of respondent and are available for inspection of the Court and of the relator". To state in the return that a certain file is available for the inspection of the court is perhaps not equivalent to making the file a part of the return or incorporating it by reference therein. In view of appellant's objection, we shall disregard the contents of the file and dispose of the case as it appears from the pleadings.

Weddeke last entered the United States as a stowaway on December 9, 1926, without being in possession of a valid immigration visa. He has never been lawfully admitted for permanent residence. These facts are not in dispute, and it is also conceded that the alien, having entered this country illegally, is subject to deportation under 8 U.S.C.A. §§ 155(a), 213, and 214. His only chance to avoid deportation was to invoke the discretionary power given to the Attorney General by 8 U.S.C.A. § 155(c), as follows: "In the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * (2) suspend deportation of such alien * * * if he finds that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien. * * *"

Some time in the early part of 1942, Weddeke was arrested on the charge of incest with his twelve-year-old daughter for acts alleged to have been committed in December, 1941, January, 1942, and May, 1942. He pleaded guilty, was convicted by the County Court of Nassau County, N. Y., on June 18, 1942, and sentenced to from five to ten years in the penitentiary.

Upon his release from the penitentiary (apparently on parole) he was arrested, on September 11, 1945, under an immigration warrant charging him with being subject to deportation on the ground of having entered the country illegally.

On December 5, 1946, he was accorded a hearing by an immigrant inspector. The inspector recommended that the alien be deported on the charge contained in the warrant of arrest.

On April 15, 1947, the Commissioner of Immigration and Naturalization ordered the relator to be deported. This order was affirmed on April 18, 1947, by the Board of Immigration Appeals, and on the same day a warrant of deportation was issued, under which warrant respondent is now holding the alien.

At a date not appearing in the record, but evidently after the warrant of deportation had been issued, the alien, according to an allegation in the petition, "requested the Immigration Service to stay deporta-

tion so that he can either open the proceedings in the County Court, for Nassau County, New York, in which he was convicted, or make a pardon application to the Governor of the State of New York, which would wipe out his conviction." This application was denied by the Commissioner on October 13, 1947. Shortly thereafter, application was made to the court below for a writ of habeas corpus.

The petition in a somewhat vague sort of way sought to attack the validity of the judgment of conviction in the state court on the ground that Weddeke had been deprived of his constitutional rights under the Fourteenth Amendment in that he had been inveigled by the District Attorney into pleading guilty to a crime of which he was innocent, without benefit of counsel and without expressly waiving his right to counsel. Cf. Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 637. Attached to the petition were affidavits by Weddeke's wife and daughter, executed October 25, 1947, to the effect that the accusation of incest was a frame-up by them and that the criminal charges were entirely untruthful. The wife's affidavit, on its face, does not set Weddeke's moral character in too good a light, for she affirms: "At the time I brought these charges I was in despair and upset because my husband was drinking heavily, and when he was intoxicated he used to be rough and noisy in the house, so that in a fit of despair I was thinking how I could get him out of the house for a period of time."

In reference to the deportation proceedings, the petition alleges: "Suspension of deportation was denied him on the ground that his conviction as aforesaid is proof of his bad moral character." It is charged that the deportation proceedings were unfair, arbitrary, capricious and contrary to law, on various asserted grounds, but first and foremost because "relator never committed the crime of incest with his daughter, of which he had been charged."

We are clearly of the view that the order appealed from must be affirmed.

By regulation, the Attorney General has delegated to the Immigration and Naturalization Service his discretionary authority under 8 U.S.C.A. § 155(c) to suspend deportation. See Code of Federal Regulations, Cum.Supp.1943, Tit. 8, § 150. Hearing by a "presiding inspector" under the warrant of arrest is provided for in § 150.6 of the regulation. The inspector is to take evidence and make proposed findings as to the deportability of the alien upon the charge contained in the warrant of arrest. He is instructed to advise the alien of his right to apply for suspension of deportation under 8 U.S.C.A. § 155(c). If the alien makes application for this discretionary suspension, the inspector is to take evidence bearing on the alien's eligibility for such relief. Section 150.7 of the regulation provides that the presiding inspector shall state in numbered paragraphs his proposed findings of fact and conclusions of law as to the alien's eligibility for suspension of deportation. The inspector is also to draft a proposed order recommending deportation, or suspension of deportation, or cancellation of the deportation proceedings, in accordance with his findings on the basis of the evidence adduced at the hearing. Provision is made for further administrative review of the proposed findings and order of the inspector.

Since the regulations of the Attorney General have set up a quasi-judicial procedure for the determination of issues bearing on the propriety of exercising his power to suspend deportation under 8 U.S.C.A. § 155(c), we assume that the alien is entitled to procedural due process in the conduct of such hearing, and we assume further that, if the Immigration Service issues a warrant of deportation without according the alien such procedural due process, the warrant can be challenged on this ground in habeas corpus proceedings. We assume, also, that if the Immigration Service issues a warrant of deportation upon an erroneous ruling of law to the effect that in the circumstances of the particular case the Attorney General has no power to suspend deportation, such warrant of deportation may be challenged on this ground in habeas corpus proceedings. In other words, the Attorney General, in delegating to the Immigration Service the exercise of his discretionary power of suspension, has directed that this discretion be

exercised by his delegate before a warrant of deportation is issued. If it be assumed that the power exists under the facts of a particular case, but that the Immigration Service declined to exercise it upon the erroneous legal ground of lack of power, then perhaps the resulting warrant of deportation would be invalid and subject to challenge on habeas corpus. At least, we shall make this assumption in relator's favor, for the purposes of this case.

■ One argument in appellant's brief, to the effect that the Immigration Service made such an error of law, necessitates a brief examination of 8 U.S.C.A. § 155(a) and § 155(d), as bearing on the discretionary power given to the Attorney General in § 155(c). Section 155(a) provides for the deportation of "any alien who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, *committed within five years after the entry of the alien to the United States*". (Italics added.) Section 155(d) states that the provisions of § 155(c) giving the Attorney General discretionary power to suspend deportation shall not be applicable in the case of any alien who is deportable under "any of the provisions of so much of subsection (a) of this section as relates to criminals * * *." Appellant argues that the Immigration Service committed an error of law in ruling that the sentencing of Weddeke to imprisonment following his conviction for incest in 1942 brought the case within the limitation of § 155(d) and thus withdrew all power from the Attorney General to suspend deportation under § 155 (c). But it nowhere appears in the petition, either expressly or by fair implication, that the Immigration Service made any such ruling that § 155(d) was applicable and precluded discretionary relief. Section 155(d) clearly has nothing to do with the case. Weddeke last entered the United States in 1926. His conviction for

incest was in 1942, more than five years after his entry. He is therefore not deportable under § 155(a) as an alien who "is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States".[1]

■ Though the judgment of conviction in the state court is strictly not res judicata in the deportation proceedings (see Burt v. Union Central Life Ins. Co., 1902, 187 U.S. 362, 367, 368, 23 S.Ct. 139, 47 L.Ed. 216), it cannot be said that the Immigration Service acted arbitrarily or capriciously in the exercise of a discretionary power by refusing to suspend deportation in the face of a judgment of a court of competent jurisdiction, convicting the alien, upon plea of guilty, of the crime of incest within the five-year period; at least if the alien made no offer at the hearing conducted by the Immigration Service to prove that the judgment of conviction was void as the result of denial to the alien of his constitutional rights at the criminal trial. The petition in the present case does not allege that, in the administrative hearing prior to the issuance of the warrant of deportation, relator offered to prove that he had been denied his constitutional rights at the criminal trial and that the judgment of conviction was therefore a nullity. It is not even clearly alleged that he offered at the administrative hearing to prove his innocence of the crime of which he had been convicted. The affidavits of the wife and daughter, annexed to the petition, attesting to Weddeke's innocence of the crime, were executed after the termination of the administrative proceeding and were, therefore, obviously not offered therein.

■ But lest relator might feel that we had disposed of the case on too narrow a reading of the petition, we may add that the result would be the same even if the petition for habeas corpus had sufficiently

[1] We have no occasion to consider in this case whether the validity of a judgment of conviction is subject to collateral attack in deportation proceedings when the warrant of arrest charges as the ground of deportability that the alien was "sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States".

alleged that, at the hearing before the immigrant inspector, the alien offered to prove, (1) that the judgment of conviction for incest was a nullity because at the criminal trial the defendant was denied his constitutional rights; (2) that in fact he did not commit the crime of which he had pleaded guilty; (3) that his moral character during the past five years had in fact been good; and (4) that deportation would result in "serious economic detriment" to his wife and children. Assuming that the Attorney General would have discretionary power under 8 U.S.C.A. § 155 (c) to suspend deportation of the alien upon a finding of these four issues in the alien's favor, yet it is clear that the Attorney General is not obliged to entertain such a collateral attack upon the state court judgment. Even if he finds that the alien has been of good moral character, and that his deportation would cause economic hardship to his family, the statute does not say that the Attorney General *must* suspend deportation; it only says that he "may". Judicial review of administrative action in such a case, if available at all, is narrowly restricted in scope. See United States ex rel. Zapp v. District Director of Immigration and Naturalization, 2 Cir., 1941, 120 F.2d 762; United States ex rel. Salvetti v. Reimer, 2 Cir., 1939, 103 F.2d 777. Granting that this discretion must be exercised honestly and in good faith, and not arbitrarily or capriciously, it cannot be held to be an abuse of discretion for the Attorney General, or his delegate, to determine that, even though the other factual prerequisites to the exercise of discretionary power under § 155(c) may be present, deportation will not be suspended in the face of a judgment of a conviction of a crime involving moral turpitude within the five-year period—a judgment which, so far as appears, the alien had had ample opportunity to attack by appropriate procedure in the courts. If the contrary were decided, it would greatly complicate administrative hearings in deportation cases; the presiding inspector and the Board of Immigration Appeals would have to inquire into what happened at the criminal trial and then decide what might be a difficult question of constitutional law, namely, whether what occurred at the trial amounted to a denial of constitutional rights and rendered the resulting judgment a nullity. That is certainly not a task lightly to be assumed by the Attorney General himself or to be imposed on the administrative officials in the Immigration Service. So far as appears in the record before us, all the Immigration Service did in this case was to rule that they would not go behind the judgment of conviction, which they would have to do in order to justify an order suspending deportation.

Nor may we conclude that, under the circumstances of this case, the Immigration Service committed a legal error or abuse of discretion, after the warrant for deportation had been properly issued, in denying the alien's application for a stay of the warrant in order to enable him to apply to the Governor for a pardon or to bring some legal proceedings to reopen the judgment of conviction.

Appellant has made certain other claims of procedural errors in the administrative hearing. We have considered them, and find them to be without merit.

Order affirmed.