**UNITED STATES ex rel. KALOUDIS**
**v. SHAUGHNESSY.**

No. 158. Docket 21572.

United States Court of Appeals
Second Circuit

Argued Jan. 30, 1950.

Decided Feb. 20, 1950.

Moerman & Moerman, New York City, Arthur G. Hayes, New York City (Harold D. Safir, New York City, of counsel), for relator-appellant.

Irving H. Saypol, U. S. Atty., New York City, William J. Sexton, New York City (Louis Steinberg, District Counsel, Immigration and Naturalization Service, New York City, Lester Friedman, Atty., Immigration and Naturalization Service, New York City, of counsel), for respondent-appellee.

See Pressman, New York City, for International Workers Order, amicus curiae.

Before L. HAND, Chief Judge, and SWAN, and CHASE, Circuit Judges.

L. HAND, Chief Judge.

This is an appeal by an alien from an order dismissing a writ of habeas corpus to release him from custody under an order of deportation. The question involved is the extent to which the district court has power to review the exercise of a discretion of the Attorney General, conferred upon him by the Immigration Act.[1] The facts are as follows. Kaloudis, the relator, is a Greek merchant seaman who entered the United States on April 22, 1944, for shore leave only, not to exceed twenty-nine days. Nevertheless, he obtained extensions of time until 1946, when his application for further leave was denied, as he was informed by letter on July 3, 1946. He was, however, allowed to make a voluntary departure on or before October 1st,[2] instead of which on

---

1. § 155(c) (2) (a), Title 8 U.S.C.A.

2. § 155(c) (1), Title 8 U.S.C.A.

September 21, 1946, he married a citizen, and they have now had a child, born on June 18, 1949. Having refused to avail himself of the privilege of voluntary departure, deportation proceedings were started against him on May 9, 1947, upon the ground that he had remained in the United States longer than was permitted by law; and the presiding inspector found that he was a deportable alien for that reason. Although the inspector also found that deportation would result in "serious economic detriment" to his wife and child, and that he was therefore eligible for a suspension of deportation under the statute,[3] he recommended that no suspension should be granted. The Commissioner adopted this recommendation on June 2, 1949; and the alien appealed to the Board of Immigration Appeals, which on July 20, 1940, dismissed the appeal and affirmed the Commissioner's order. The Board gave as its reason for refusing a suspension, that "the alien was a member of an organization appearing on the proscribed list issued by the Attorney General, the International Workers Order." Although the record does not expressly say so, we shall dispose of the writ on the assumption that the Board refused to grant the relator any hearing as to whether the activities of the "Order" were in any way inimical to the interests of the United States. Further, in spite of the Board's statement that its decision was upon "all of the evidence upon record," we shall also assume that its action was based only upon the relator's membership in the "Order"; with which he had severed his connection at the time of the hearing.

 The interest which an alien has in continued residence in this country is protected only so far as Congress may choose to protect it; Congress may direct that all shall go back, or that some shall go back and some may stay; and it may distinguish between the two by such tests as it thinks appropriate.[4] The relator does not challenge the test here applied, so far as

concerns the deportation order itself; he agrees that, so far as his interest in residing in this country was protected by statute—in so far as it was "a legally protected interest"—it had been forfeited. His position is that, being concededly eligible for suspension of deportation, he was entitled to the exercise of the Attorney General's discretion, and that it appears that this has not been in fact exercised in accordance with the limitations, which must be assumed to confine it. Unless he is to be permitted a hearing to show that it has not been so exercised, he says that he will be denied "due process of law." It does not appear from the record that the Attorney General—through the Board, his delegate —has exercised his discretion in disregard of any implied limitations. We will assume *arguendo* that the contrary might appear: *i. e.*, that the reason given might be so clearly irrelevant that a court could say that the Attorney General had transgressed the statute. Suppose, for example, that he denied suspension because the alien had become too addicted to attending baseball games, or had bad table manners.[5] But membership, even past membership, in an organization which the Attorney General has "proscribed" may make an alien's continued residence prejudicial to the public weal. True, without an inquiry we cannot know whether membership in the "Order" is prejudicial; for we cannot tell whether the Attorney General had adequate grounds for "proscribing" it. On the other hand we cannot say that he did not; and, if the relator has the privilege of inquiring into the grounds, he has been wronged, and the writ should have gone. An alien has no such privilege; unless the ground stated is on its face insufficient, he must accept the decision, for it was made in the "exercise of discretion," which we have again and again declared that we will not review.[6]

 Nor has the relator any constitutional right to demand that we should. As we have said, any "legally protected interest" he ever had has been forfeited by

3. § 155(c) (2), Title 8 U.S.C.A.

4. United States ex rel. Zapp v. District Director of Immigration & Naturalization, 2 Cir., 120 F.2d 762.

5. United States ex rel. Weddeke v. Watkins, 2 Cir., 166 F.2d 369.

6. United States ex rel. Salvetti v. Reimer, 2 Cir., 103 F.2d 777; United States ex

"due process of law"; forfeited as completely as a conviction of crime forfeits the liberty of the accused, be he citizen or alien. The power of the Attorney General to suspend deportation is a dispensing power, like a judge's power to suspend the execution of a sentence, or the President's to pardon a convict. It is a matter of grace, over which courts have no review, unless—as we are assuming—it affirmatively appears that the denial has been actuated by considerations that Congress could not have intended to make relevant. It is by no means true that "due process of law" inevitably involves an eventual resort to courts, no matter what may be the interest at stake; not every governmental action is subject to review by judges.

Order affirmed.

rel. Weddeke v. Watkins, supra, 166 F.2d 369; United States ex rel. Zeller v. Watkins, 2 Cir., 167 F.2d 279, 282; United States ex rel. Bartsch v. Watkins, 2 Cir., 175 F.2d 245; United States ex rel. Walther v. District Director of Immigration & Naturalization, 2 Cir., 175 F.2d 693; Sleddens v. Shaughnessy, 2 Cir., 177 F.2d 363, 364.