**MASTRAPASQUA v. SHAUGHNESSY, Director.**

No. 140, Docket 21527.

United States Court of Appeals Second Circuit.

Argued Jan. 10, 1950.

Decided March 2, 1950.

Charles Graff, of New York City, for appellant.

Irving H. Saypol, of New York City (William J. Sexton, Louis Steinberg and Lester Friedman, of New York City, of counsel), for appellee.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The statutes authorizing voluntary departure of deportable aliens, and the suspension of their deportation, state that the Attorney General "may" grant these forms of relief. In considering applications for such relief, then, the Attorney General exercises powers of discretion. In addition to these powers granted by statute, the Attorney General, by regulation, has also established the discretionary relief of "preexamination." See 8 C.F.R. 142. He has delegated all of these discretionary powers to the Commissioner of Immigration and Naturalization and to the Board of Immigration Appeals. See 8 U.S.C.A. § 458(a); 8 C.F.R. 90, 150. His regulations have the force and effect of law. See Caha v. United States, 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415; Boske v. Comingore, 177 U. S. 459 20 S.Ct. 701, 44 L.Ed. 846. The Regulations specifically provide that a person, like Mastrapasqua, subject to deportation, may apply for one or all of these forms of discretionary relief: (1) voluntary

departure; (2) suspension of deportation; (3) pre-examination. See 8 C.F.R. 150.6 (g) (3).[6]

■ Courts have no power to review administrative discretion when it is reasonably exercised. United States ex rel. Weddeke v. Watkins, 2 Cir., 166 F.2d 369, 373, certiorari denied, 333 U.S. 876, 68 S.Ct. 904, 92 L.Ed. 1152. But, in appropriate circumstances, they can compel correction of an abuse of discretion or can compel an official to exercise his discretion where he has obviously failed or refused to do so. Such an obvious refusal occurs, we think, when an official sets up a class of cases as to which he refuses ever to exercise any discretion, one way or the other, if that class is not rationally differentiated from other cases, not within that class, where he uses his discretion case by case. Thus, where a trial judge refused to pass upon petitions for naturalization "because of a policy * * * not to grant citizenship during the war" to a certain class of persons, it was held that the upper court could direct him to exercise his discretion. Schwab v. Coleman, 4 Cir., 145 F.2d 672. This same doctrine has often been applied to officials who are not judges. See, e. g., the statement in Wilbur v. United States, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809.

■ The Board here has held that the discretionary power delegated to it by the Attorney General cannot be exercised to allow Mastrapasqua either pre-examination or suspension of deportation. The sole ground given has been that Mastrapasqua is a member of a class to which the Attorney General has decided that, as a matter of policy, such discretionary relief shall not be accorded. For here, the Board, in denying these two types of relief to Mastrapasqua, has twice held that it was bound by the decision of the Attorney General in Matter of Lagomarsino, No. A-5955999,

and the nature of that decision appears from the following:

Lagomarsino (like Mastrapasqua) came to the United States on an Italian vessel which, for security reasons, was seized by the American authorities. On May 21, 1941, the Board affirmed a decision denying his application for voluntary departure and pre-examination. On October 24, 1945, however, because of Lagomarsino's record while living in this country, and because of his marriage to an American citizen, the Board granted pre-examination and a stay of deportation. The Commissioner, on November 5, asked the Board to reconsider its position. He said that, as to aliens present in the United States "solely because of reasons connected with the war," it was the "policy" of the Immigration Service "not to apply procedures looking to the adjustment of their status in the United States." The Commissioner said that the most favorable action theretofore taken in such cases had been to grant permission to depart voluntarily and to give consideration to applications for permission to re-apply within one year after departure. Considering the Commissioner's request, the Board, on December 14, 1945, agreed that "as a general policy where an alien has been brought to this country because of conditions arising out of the war, he should be returned to his native or adopted country * * * as soon as practicable." But, said the Board, this general policy "should be administered in such a manner as not to bring about harsh consequences." Accordingly, the Board granted Lagomarsino pre-examination, voluntary departure, and permission to re-apply within one year of departure. Because, however, "a question of policy" was involved, the Board, at the Commissioner's request, referred its decision and order to the Attorney General for review. On February 8, 1946, the Attorney General directed that the Board's order of

6. The regulation reads: "At any time during the hearing the alien may apply * * * (1) * * * for suspension of deportation * * * or * * * (2) * * * for the privilege of departing the United States at his own expense in lieu of deportation * * * or * * * (3) for the privilege of departing the United States at his own expense in lieu of deportation and the privilege of pre-examination. * * * The alien may apply simultaneously for more than one of these three reliefs."

December 14, 1945, be set aside, and that the Board's earlier order, of May 21, 1941 —the order denying voluntary departure and pre-examination—be reinstated and approved. The Board had referred its decision and order to the Attorney General under Title 8, Sec. 90.12, Code Fed.Regs. That section (see 1945 Supplement) provided that, if the Attorney General reversed the decision of the Board, he should "state in writing his conclusions and reasons for his decision." But, the Attorney General's order of February 8, 1946 merely directed the Board to reverse itself; the Attorney General gave no explanation or justification.

However, since, in Lagomarsino, he overruled the Board and thus agreed with the Commissioner, it seems clear that the Attorney General was acting in accordance with a "policy" of refusing to consider whether or not to give discretionary relief of pre-examination to any persons coming within a fixed category, i. e., those whose presence in the United States is due solely to the war. It is also clear that the Board felt constrained by the Lagomarsino decision to apply the "policy" based on this classification to Mastrapasqua's requests for, first, pre-examination, and, later, suspension of deportation. No justification of this classification is in the record of either the present case or in Matter of Lagomarsino. Nor can we discern any. There seems no more rationality in this classification than there would be in arbitrarily refusing to consider discretionary relief for all left-handed men or for all whose names begin with the first thirteen letters of the alphabet. Consequently, we conclude that the classification is capricious.[7]

We need not here decide whether the district court, in a *habeas corpus* proceeding or otherwise, can properly, by mandamus, direct that discretion be exercised, one way or the other, without regard to this classification. For the district court can properly release Mastrapasqua from custody unless that action is taken.[8]

Accordingly, we remand with directions to the district court to order appellant released from custody unless, within a reasonable time to be determined by the district court, the Immigration and Naturaliza-

7. Although we do not rest our decision thereon, we note in passing the following facts showing that this classification has been capriciously applied by the Commissioner:

In the Lagomarsino case, as we have seen, the Commissioner urged that pre-examination be denied to all persons in this class, and the Attorney General, over-ruling the Board, so decided. On November 20, 1946—ten months after the Attorney General's decision in that case—the Board, solely on the basis of the Lagomarsino decision, denied pre-examination to Corrao, another Italian seaman of this class whose wife and children (like Mastrapasqua's, but unlike Lagomarsino's) were in Italy. Nevertheless, on May 7, 1947, the Commissioner granted pre-examination to Corrao. See Matter of Corrao, No. A-5190348. (Matter of Corrao is discussed in the Board's decision of October 1, 1948, on Mastrapasqua; see Appendix to our opinion.)

As no one was in a position to appeal, that decision was never reversed. But, after that decision in Corrao's favor, the Board refused to exercise discretion as to pre-examination as requested by Mastrapasqua, saying, in effect, that the Commissioner in Corrao's case had improperly disregarded the classification established by Lagomarsino's case.

It thus appears that the Commissioner, at least in one case, has capriciously ignored the classification on which he successfully insisted in Lagomarsino's case. He seems to act arbitrarily in not using that classification, and, when he does so, his action is not reviewable.

8. In its brief, the government suggests that pre-examination could not have been granted Mastrapasqua in May, 1948, and cannot be granted him now, because, then and since, the Italian immigration quota has been heavily over-subscribed. Whether that was and is true, we do not know. At any rate, no such reasonable basis was advanced for denying Mastraprasqua's requests. Rather, there were wrongful refusals to exercise any discretion as to both pre-examination and suspension of deportation. Even if pre-examination is not now available, suspension of deportation, at least, is open. See 8 U.S.C.A. § 155 (c) as amended in 1948.

tion Service exercises discretion, one way or another, with respect to Mastrapasqua upon his application for pre-examination or suspension of deportation.[9]

Reversed and remanded.

### APPENDIX

*Board Decision of October 1, 1948 on Mastrapasqua.*

File No. 56074/211

In the Matter
of
FRANCESCO MASTROPASQUA

Motion in Deportation Proceedings

This record is before us on motion to reconsider an order entered by this Board December 12, 1947, granting the respondent voluntary departure within sixty days after notification of decision and further providing for his deportation to Italy in the event he fails to depart within the time limit above stated. The respondent in an affidavit in support of motion urges that this Board grant the additional privilege of preexamination. Respondent avers that he has been in the United States for more than seven years, that his departure would result in a great hardship in that it would entail residence in a foreign land for a long period of time while awaiting a quota visa, and that this Board in a similar case (Matter of Corrao, 5190348, May 7, 1947) granted the privilege of preexamination.

The respondent, a native and citizen of Italy, last entered the United States at Boston, Massachusetts, on June 7, 1940, as an Italian seaman. Following the entry of Italy into World War II, the respondent's vessel remained in port. The respondent remained on board until removed by the Coast Guard on March 30, 1941, pursuant to the program to avoid the sabotage of Italian vessels interned as a result of Italy's entry into the war. A warrant for the respondent's arrest was issued March 31, 1941. A warrant for his deportation on the charge laid under the Act of 1924, to wit:

that after entry as a seaman he remained longer than permitted, is dated May 23, 1941.

During the war the respondent was interned at Fort Missoula, Montana, along with other Italian seamen. He was paroled in March of 1944. Since his parole the case has been considered several times on motion. Warrants of deportation have on at least two occasions been withdrawn to give the respondent an opportunity to depart voluntarily.

The respondent now seeks the additional privilege of preexamination and refers to the action taken in the Matter of Corrao (supra). While it is true that the facts of this case are similar, this Board finds that on November 20, 1946, we granted the alien Corrao voluntary departure, denied his application for preexamination, and placed him on notice that unless departure was effected within the time limit set, we proposed to order his deportation. Thereafter on the alien's motion, the Commissioner, and not this Board, entered an order as of May 7, 1947, granting Corrao the additional privilege of preexamination and extending the time of voluntary departure previously granted by this Board. Notwithstanding the Commissioner's action in the Corrao case, this Board is of the opinion that we are bound by the Attorney General's decision in Matter of Lagomarsino, 5955999 (February 8, 1946), a case involving a similar factual background in that Lagomarsino was an Italian seaman whose presence in the United States was the result of conditions arising out of World War II. The Attorney General refused to legalize Lagomarsino's residence through preexamination proceedings even though he was married to an American citizen. In the case at bar the respondent's wife and four children reside in Italy. The only mitigating factor in the case before us is the continued residence of the respondent in the United States since June of 1940. This factor we deem insufficient

---

9. We are not to be taken as saying that the Attorney General may not be able to supply a rational explanation of his classification, but merely that, as matters now stand, we perceive none.

in view of the Attorney General's decision above referred to. The motion will be denied.

ORDER: It is directed that the motion be and the same is hereby denied.

(Signed) Thos. G. Finucane
Chairman

JBB:MJW

*Board Decision on Mastrapasqua,*

*December 3, 1948*

File No. 5587208

In the Matter
of
FRANCESCO MASTROPASQUA

Motion in Deportation Proceedings

This is a motion filed by counsel, asking that the proceeding be reopened for further hearing and determination of a proposed application for suspension of deportation under the provisions of Public Law 863, 62 Stat. 1206, amending Section 19 of the Immigration Act of February 5, 1917, 8 U.S.C.A. § 155(c) and for stay of proposed deportation.

The record discloses that the subject of the present proceeding was born in Bari, Italy, on January 17, 1889 (p. 2), and that he arrived at Boston, Massachusetts on June 7, 1940 as a member of the crew of the SS "Dino."

This individual was found subject to deportation on May 23, 1941, and his return to Italy was ordered because it was found that he remained longer than permitted under the provisions of the Act approved May 26, 1924, Sections 14 and 15, 8 U.S.C.A. §§ 214, 215, and the regulations promulgated thereon.

Upon reconsideration of the case under date of November 15, 1945 the outstanding order and warrant of deportation were withdrawn and the alien was given permission to leave the United States within 60 days after notification of that decision.

A motion asking that the alien be granted preexamination was denied subsequently and the decision of the Commissioner in this regard was affirmed on October 3, 1946.

On January 28, 1947 a motion to reopen this proceeding was denied.

The matter received further consideration by the Commissioner of Immigration and Naturalization, and on February 25, 1947 the alien was granted an additional period of one month within which to depart from the United States without an order of deportation outstanding. At that time he was placed on notice that if departure in these circumstances was not effected, it was proposed to order deportation. Notwithstanding this order, upon further consideration of the matter by the Commissioner of Immigration and Naturalization on May 9, 1947, the time within which to depart was extended for a period of 30 days and the alien was placed on notice that unless his departure was effected it was proposed to enter an order of deportation.

The matter came before the Immigration and Naturalization Service on July 10, 1947, and on that occasion a request that proceedings be deferred pending congressional action on proposed legislation was denied and that decision was affirmed by this Board on July 15, 1947.

The Immigration and Naturalization Service again had the matter under consideration on September 29, 1947, on which occasion a motion filed by counsel for an extension of time within which to depart was denied by the Acting Commissioner. On that occasion the Service entered an order of deportation to Italy. An appeal was entered from that decision, and on December 12, 1947, after consideration by this Board, the alien was given 60 days within which to depart from the United States without an order of deportation outstanding, and it was directed that unless he so departed an order of deportation be entered.

Counsel filed a motion on April 6, 1948 requesting that execution of the order of deportation be deferred. That request was considered by the Assistant Commissioner of Immigration and Naturalization on April 16, 1948, at which time the request was denied.

The case was next considered by this Board on October 1, 1948, by reason of a request filed by counsel to reconsider the matter and to grant the alien permission to leave without an order of deportation, together with the additional privilege of preexamination. That motion was denied and the reasons for such denial are set forth in detail in the decision of this Board of October 1, 1948, citing as a basis for the position of the Board the decision in Matter of Lagomarsino, No. 5955999 (A. G. Feb. 8, 1946).

It was pointed out that in the case under consideration the alien's wife and four children reside in Italy, and for that reason the case is distinguishable from that of Lagomarsino. A further motion was denied on October 29, 1948.

As hereinbefore set forth, this case is before us on motion in order that an application for suspension of deportation may be filed pursuant to Public Law 863.

This case has been deferred from time to time by the action of counsel. The alien involved was one of a group of Italian seamen who, according to the record, was not admitted to the United States for permanent residence but subsequent to his arrival intended to remain here until his commander told him to leave. Subsequent to entry of Italy into World War II, the alien's vessel remained in port and as a seaman the subject hereof remained aboard the vessel until his removal therefrom by the Coast Guard on March 30, 1941 in order to prevent sabotage of the vessel.

During World War II the subject hereof was interned in Fort Missoula, Montana, and during March of 1944 he was paroled.

The case is one squarely within the terms of the decision of the Attorney General in the Lagomarsino case (supra), and accordingly he cannot be granted the privilege of applying for suspension of deportation. The motion must therefore be denied.

ORDER: It is ordered that the motion be and the same is hereby denied.

(Signed) Thos G. Finucane
Chairman

RMC:BPF

*Opinion and orders in Matter of Lagomarsino, File No. 5955999.*

December 14, 1945

5955999—New York

In re: ALDO LAGOMARSINO

In Exclusion Proceedings

*Excluded:* Act of 1924—No immigration visa
Executive Order 8766—No passport
Alien Registration Act of 1940—No visa, reentry permit or border crossing card
Act of 1917—Likely to become a public charge

Application: Permission to adjust immigration status

Discussion: This record relates to a 23-year-old native and citizen of Italy who was brought to the United States from Cristobal, Canal Zone, on April 5, 1941, aboard the U. S. A. T. "Leonard Wood," he having been a cabin boy aboard the Italian SS "Conte Biancamano" which for security reasons had been seized by the American authorities. On April 14, 1941, he was given a hearing before a board of special inquiry for the purpose of determining his admissibility to this country under the immigration laws. After the hearing the board of special inquiry excluded him on the grounds above stated, and though the appellant then took no appeal, his attorney thereafter apparently duly filed an appeal. This Board considered the case on appeal on May 21, 1941, and affirmed the excluding decision solely on the documentary grounds.

The then existing European conflict made the deportation of the alien pursuant to the excluding decision, impossible. For that reason he was sent to Fort Missoula, Montana, for detention purposes. After our entry into the war, alien enemy proceedings were instituted against him and apparently the Attorney General directed his internment. Notwithstanding this order, the alien was permitted to engage in employment and from March to May 1943 he worked as a laborer for a sugar beet compa-

ny in Montana. From June to September 1943 he was employed in Idaho as a truck driver for the United States. Forestry Service. From September 1943 to January 1944 he worked as a cook's helper in a Missoula, Montana, cafe. He was then paroled by the proper authorities for the purpose of proceeding to Baltimore, Maryland, and since that time he has lived in that city. Alien enemy proceedings were finally vacated in April 1944 and he was then released to the immigration authorities for appropriate action. On July 29, 1944, this Board directed his parole in immigration proceedings under such conditions as would assure his appearance when wanted.

Since establishing his residence in Baltimore the alien has been gainfully employed as a restaurant cook at $45 weekly. He has never had any difficulties with the police authorities in this or any other country and has always conducted himself as a law-abiding person. In July 1944 he became engaged to an American-born girl and on May 28, 1945, they were married. His wife is entirely dependent upon him for support and they have a joint savings account amounting to approximately $1000.

After the alien's marriage, his wife, pursuant to section 9 of the Immigration Act of 1924, petitioned the Department for the determination of her husband's status as a potentional immigrant, it appearing that he was qualified for the issuance of a preference quota visa under section 6 of the 1924 Act. About the same time the alien's attorney, with a view towards the adjustment of his client's status, filed a motion requesting that the alien be granted the privilege of preexamination in conjunction with permission to reapply for admission following exclusion and deportation. Because in the meantime the alien had been directed by the immigration authorities to report for deportation pursuant to the outstanding excluding decision, the attorney, on June 18, 1945, moved that deportation be stayed until such time as this Board could act upon the previous motion for preexamination and permission to reapply.

The Central Office of the Immigration and Naturalization Service forwarded the entire case to this Board for consideration on June 27, 1945, and in its transmitting memorandum recommended that favorable action be taken on the motions submitted by the attorney. However, because the Board then had no jurisdiction to consider the motion for a stay of deportation, the case was returned to the Immigration and Naturalization Service on July 3, 1945, for immediate action on that aspect of the case. On July 10, 1945, the Immigration and Naturalization Service reversed its previous position and in substance advised the alien's attorney that it was contrary to the Service's policy to enter stays of deportation in that type of case. Later, however, on July 20, 1945, apparently because of the serious illness of the alien's wife, a stay was granted until the next scheduled sailing of the SS "Gripsholm" on or about October 1, 1945.

The alien's attorney on August 14, 1945, again renewed his motion for discretionary relief to be exercised on behalf of the alien and requested that if the Immigration and Naturalization Service took unfavorable action, the case be forwarded, pursuant to then existing regulations, to this Board for review. The Central Office on September 26, 1945, directed the port to proceed with the alien's deportation on or about October 15, 1945, and the port so advised the alien on October 3, 1945. Two days later, on October 5, 1945, apparently to permit this Board to act upon the motion for relief, the Central Office granted the alien a stay of deportation for thirty days. That same day the case was forwarded to this Board with a recommendation that the motion be denied.

On October 24, 1945, the Board, because of the alien's unimpeachable record while living in this country since 1941 and because of his marriage to an American citizen, granted the relief requested. On November 5, 1945, the Commissioner returned the case to us for reconsideration, requesting that the matter be referred to the Attorney General in the event we did not see fit to withdraw our order of October 24, 1945. The position of the Commissioner,

as stated in his memorandum of November 5, 1945, is as follows:

"The alien's presence in the United States has been solely because of reasons connected with the war. It is the policy of this Service to return aliens in this category to the native countries as soon as practicable. Therefore, immigration procedures looking to the adjustment of their status in the United States have not been applied to their cases. However, several of these aliens who have been married to citizens of the United States have been granted permission to depart voluntarily from the United States at their own expense, and the Service has agreed to give consideration to applications for permission to reapply within one year after exclusion and deportation immediately upon receipt of verification of their departure. I believe that this is the most favorable action which should be taken in any of these cases."

The Board agrees with the Commissioner that as a general policy where an alien has been brought to this country because of conditions arising out of the war, he should be returned to his native or adopted country, as the case may be, as soon as practicable. But, because it is a general policy and because human relationships and emotions are involved, it should be administered in such a manner as not to bring about harsh and burdensome consequences. And if the rigid application of the general policy leads to such consequences, it should be modified, shaped and fitted, wherever possible, to meet the needs of the particular case. Thus the policy does not become the master; it remains, flexibly administered, an instrument to effectuate justice.

The results which the Board and the Commissioner desire to bring about are the same, namely, the legalization of the alien's residence so that he may live here with his American wife. Because of the general policy of the Service, the methods to be employed to bring about this socially desirable result are different. The Commissioner would have the alien return to Italy either at his or this government's expense, and then remain there until (1) his wife's petition for preference status is acted upon by the Department, (2) his application, for permission to reapply for admission following his exclusion and deportation (under the law, the alien's departure to Italy results in deportation and accordingly reentry within one year cannot be effected without permission from the immigration authorities) receives favorable consideration, (3) his application for an immigration visa is passed upon by the State Department authorities, and (4) such time as transportation facilities to this country from Italy become available. In the meantime, his American wife, who, according to the affidavits on file, is wholly dependent upon him for support, and not in the best of health, will presumably be left without any means of maintenance. She might have to live upon whatever assets they now have and if these prove insufficient, become a public charge. And this condition might well obtain for an indefinite period of time because of the necessity of using available transportation facilities for returning military personnel. The possible social maladjustments resulting from the rigid application of the Service's policy are self evident.

The Board, on the other hand, believes that the objective of legalizing the alien's status can be achieved while the alien remains here with his wife, supporting her as he has in the past. This can be accomplished by our granting the alien preexamination together with permission to reapply for admission following exclusion and deportation. While going through preexamination procedure, the wife's petition can be acted upon. If the alien is successful in preexamination, and, according to the record before us, he will be, he can then proceed to Canada in accordance with a previously entered into arrangement, apply for and obtain his visa and reenter as a lawful resident. In this way, no family separation with all its possible unfortunate repercussions will ensue.

To summarize, the Board believes that its method of disposing of the case is sound, practicable and equitable. It is not, as is the Service's recommendation, circuitous,

burdensome, expensive or fraught with possible disastrous consequences.

Since our order of October 24, 1945, did not take into account the alien's inadmissibility, upon departure and application for reentry, on the ground of seeking admission without permission within one year after exclusion and deportation, the outstanding order will be appropriately amended.

ORDER: The order of October 24, 1945, is withdrawn and the order of May 21, 1941, is amended to read:

The excluding decision is affirmed solely on the documentary charges and without prejudice to a reapplication for admission within one year; the parole of the alien is continued for 6 months from date of notification of decision to permit him to apply for preexamination, authorization for which is hereby granted; and permission is granted for the alien to depart voluntarily at his own expense to any country of his choice within said six-month period, his departure to be deemed a compliance with the excluding decision.

(Signed)   Thos. G. Finucane
Chairman

As a question of policy is involved and in accordance with the request of the Commissioner, the Board, pursuant to section 90.12, Title 8, Code of Federal Regulations, refers its decision and order to the Attorney General for review.

(Signed)   Thos. G. Finucane
Chairman

NW:mlp

December 13, 1945

## MEMORANDUM FOR THE ATTORNEY GENERAL

In   re:   Aldo   Lagomarsino
File:   5955999

The attached case is certified to you for review of the Board's decision. The issue involved is one of policy, to wit: Should a member of the crew of the Italian SS "Conte Biancamano", brought to the United States by the U. S. A. T. "Leonard Wood" in the spring of 1941, be permitted to legalize his residence in the United States

through preexamination, where he is married to a United States citizen.

(signed)   Thos. G. Finucane
Thomas G. Finucane
Chairman

TGF/vbe

February 8, 1946
5955999

## In re:   ALDO LAGOMARSINO

Before the Attorney General for review of an order suspending deportation.

The findings of fact, conclusions of law and order of the Board of Immigration Appeals of December 14, 1945 suspending the deportation of the respondent is hereby set aside and the order of the Board of Immigration Appeals, dated May 21, 1941, denying the application for voluntary departure and preexamination is hereby reinstated and approved. It is directed that the aforesaid order be executed without delay.

/signed/   Tom C. Clark
Attorney   General

*(Final entry typed on Lagomarsino file.)*

## ALDO LAGOMARSINO
5955999

February 8, 1946

A member of the crew of the Italian SS "Conte Biancamano", brought to the United States by the United States Army Transport, "Leonard Wood," will not be permitted to legalize his residence through pre-examination even though he is married to a United States citizen.

Discretionary Relief

Pre-examination

CHASE, Circuit Judge (dissenting).

We have repeatedly held that where there has been an exercise of discretion under this statute there can be no judicial review. United States ex rel. Weddeke v. Watkins, 2 Cir., 166 F.2d 369, certiorari denied, 333 U.S. 876, 68 S.Ct. 904, 92 L.Ed. 1152; United States ex rel. Walther v. District Director, 2 Cir., 175 F.2d 693; United States ex rel. Sleddens v. Shaughnessy, 2 Cir., 177 F.2d 363. In this instance, the appellant has been the beneficiary of

favorable discretionary action, in that he was given ample opportunity to depart voluntarily despite the admittedly valid order for his deportation.

It seems to me that what has been done for him conclusively shows that discretion has been exercised and that my brothers are actually, and mistakenly, reviewing that exercise by holding that the reason given for denying the appellant further relief from the deportation order is not good enough. I can only say, with deference, that if there is any distinction between reviewing an exercise of discretion and reviewing the reasons given for taking, or denying, such action it is one without substance. I put aside any instance where the stated reason for refusing favorable discretionary action, or that which is as favorable as desired by the appellant, is palpably irrelevant and arbitrary, both because such a situation is not here presented and because it is unlikely that responsible officers of the government would perform their duties with so light a touch. In any event that problem can be dealt with if and when it arises.

Here the denial of the greater relief sought was based on a supposedly similar denial by the Attorney General in a supposedly similar situation. This record shows no more on that score. But if we may, which I doubt, go outside this record to take notice of the facts and the disclosed reasons for the Attorney General's denial in the other instance, we find that he gave no reasons. Yet it is assumed that he then adopted a classification made by someone else. Even on that assumption he, then, and the Board in this instance, but gave effect to a policy of denying the favor of pre-departure examination to those aliens who had been able, or been compelled, to remain in this country for the statutory period because of conditions attributable to the war. Judges should not offhandedly —without any showing that there are no administrative, or other, conditions which may make such a classification not only reasonable but, perhaps, practically necessary—hold it to be so capricious that its application amounts to a reviewable failure to exercise discretion at all. See, U.S. ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489.

I would affirm the order.