**ALEXIOU v. McGRATH et al.**

Civ. A. No. 222–50.

United States District Court
District of Columbia.

Nov. 19, 1951.

David Rein, Washington, D. C., for the plaintiff.

Ross O'Donoghue, Samuel K. Abrams, and Jerome Powell, Asst. U. S. Attys., Washington, D. C., for the Government.

YOUNGDAHL, District Judge.

Plaintiff is seeking a judgment setting aside an order of deportation and restraining defendants from deporting her pursuant to such order.

The essential facts are not in dispute. Plaintiff is an alien and a native of Canada. She is married to a citizen of the United States. She entered this country from Canada without an immigration visa and is therefore subject to deportation.

Pursuant to the provisions of 8 U.S.C.A. § 155(c), plaintiff applied for suspension of deportation because of her marriage to a citizen of the United States. She was granted a hearing on her request for suspension of deportation in accordance with the regulations of the Immigration and Naturalization Service. After the hearing before the Presiding Inspector, he concluded "that under Section 19(c)(2) of the Immigration Act of February 5, 1917, as amended, the respondent is ineligible for suspension of deportation".

The Acting Commissioner of Immigration reviewed and affirmed the Inspector's opinion and said, inter alia, "Upon examination of the file covering the alien, which contains not only the record of hearing but other evidence concerning the alien's activities, we are satisfied that as a matter of discretion the recommendation of the Presiding Inspector should be followed and the alien deported. * * * Since relief from deportation is not a matter of right but of discretion, it is quite apparent that any evidence, whether or not of record, officially touching upon the question of qualification for the benefit sought may be considered. The evidence in the file (some of it confidential in nature) establishes to our satisfaction that the alien's continued presence in the United States would be prejudicial to the interests of this country. Obviously, therefore, the request made by this deportable alien must be denied."

Thereafter, in accordance with the rules and regulations of the Immigration and

Naturalization Service plaintiff appealed the decision of the Acting Commissioner of Immigration to the Board of Immigration Appeals. On November 8, 1949, this Board reversed the decision of the Acting Commissioner. The Board held that it was an error of law for the Acting Commissioner of Immigration to base his conclusion upon not only the record of hearing but other evidence concerning the alien's activities.

Thereafter, on November 16, 1949 the Acting Attorney General issued an order approving the decision and order of the Board of Immigration Appeals.

However, on December 17, 1949, without notice or hearing, the Acting Attorney General entered an order withdrawing his approval of November 16, 1949; disapproved the decision and order of the Board of Immigration Appeals and approved the order of deportation. The record does not disclose the reason for the reversal of the position of the Acting Attorney General.

Plaintiff contends that she was denied a fair hearing because, admittedly, evidence not of record was considered on the issue of eligibility for suspension of deportation. The government at the time of trial conceded that plaintiff was eligible for suspension of deportation and that the action of the Attorney General in refusing to suspend is not reviewable.

Under the regulations adopted by the Attorney General a quasi-judicial procedure has been established for the purpose of enabling him to properly and reasonably exercise his discretion in determining whether deportation shall be suspended under 8 U.S.C.A. § 155(c). These regulations are quite comprehensive in affording an opportunity for a fair hearing. 8 C.F.R., 150 6(a, b, c, g,), 150 7(a, b, c). They have the force and effect of law. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103. These rules are designed as safeguards against essentially unfair procedures. Bridges v. Wixon, supra. The Court in the Bridges case said at page 154 of 326 U.S., at page 1452 of 65 S.Ct.: "Here the liberty of an individual is at stake. Highly incriminating statements are used against him—statements which were unsworn and which under the governing regulations are inadmissible. We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness." What the government contends in essence is that even though this procedure has been established, suspension of deportation is not a vested right and a fair hearing is not required to be given; that the Attorney General is not bound by the hearing; that his decision is final and not reviewable.

It is true, of course, as the government contends, that the grant or denial of suspension of deportation is discretionary. Immigration Act of February 5, 1917, as amended, Section 19(c), 8 U.S.C.A. § 155 (c); U. S. ex rel. Weddeke v. Watkins, 2 Cir., 166 F.2d 369; U. S. ex rel. Von Kleczkowski v. Watkins, D.C., 71 F.Supp. 429. But it is quite another thing to assert that after regulations have been adopted providing for a fair hearing on the issue of eligibility for suspension of deportation that the Courts are precluded from examining the record to determine if a fair hearing has been accorded. If the position of the government were to be sustained then no matter how much the hearing was tainted with unfairness, no relief would be available, because the action of the Attorney General is final and is not reviewable.

While I fully recognize and agree with the doctrine that Courts should not ordinarily interfere with administrative decisions, I cannot subscribe to the position that no matter how unfair the hearing may be there is no recourse because, in the final analysis the Attorney General has the discretion to grant or deny the suspension of deportation. It is one thing to be attempting to interfere with administrative

discretion through the Courts. It is quite another thing to seek relief from the Courts where it is clear from the record itself that a fair hearing was not obtained.

Once the Attorney General has established the procedure affording an opportunity for a fair hearing as has been done here, then I do not believe his discretion can be exercised arbitrarily or capriciously in complete disregard of what appears on the record. These proceedings were infected with unfairness by a consideration of matters outside the record. Any action based on such an unfair hearing is a nullity. If that were not so then we would be injecting into our own system of government the very principles of totalitarianism which we are today struggling to strike down.

I shall not attempt to harmonize the decisions on the matter of interference with the Attorney General's discretion in a case such as this. In some cases one might conclude from the language that the Attorney General's action is not reviewable. Von Kleczkowski v. Watkins, supra, United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489. And yet even in these cases relied upon by the government, and which I believe to be distinguishable on the facts, there is the hint that the conclusion might have been different in the event of an unfair hearing. For example, in the Von Kleczkowski case the Court, inter alia, said [71 F.Supp. 436]: "* * * in the case at bar both the examining inspector and the Board of Immigration Appeals had recommended the denial of discretionary relief without recourse to the Tilly report. One would have to be unduly naive to suppose that, without that report, the denial of discretionary relief was not supported by the record." Likewise in the Kaloudis case the Court stated in 180 F.2d on page 490 of the opinion: "* * * if the relator has the privilege of inquiring into the grounds [of the Attorney General's decision], he has been wronged, and the writ [of habeas corpus] should have gone. An alien has no such privilege; *unless the ground stated is on its face insufficient,* (underlining supplied) he must accept the decision * * *." Other authorities either hold or imply that the Attorney General's exercise of discretion may be reviewed. United States ex rel. Adel v. Shaughnessy, 2 Cir., 1950, 183 F.2d 371; Matrapasqua v. Shaughnessy, 2 Cir., 1950, 180 F.2d 999; Vergas v. Shaughnessy, D.C. N.Y.1951, 97 F.Supp. 335.

There is ample authority sustaining the necessity of a fair hearing. Bridges v. Wixon, 326 US. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; Whitfield v. Hanges, 8 Cir., 222 F. 745; United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; U. S. ex rel. Castro-Louzan v. Zimmerman, D.C., 94 F.Supp. 22. See also U. S. ex rel. Salvetti v. Reimer, 2 Cir., 103 F.2d 777; Japanese Immigrant case (Yamataya v. Fisher), 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721. In the Weddeke case, supra, the Court said at page 371 of 166 F.2d: "Since the regulations of the Attorney General have set up a quasi-judicial procedure for the determination of issues bearing on the propriety of exercising his power to suspend deportation under 8 U. S.C.A. § 155(c), we assume that the alien is entitled to procedural due process in the conduct of such hearing, and we assume further that, if the Immigration Service issues a warrant of deportation without according the alien such procedural due process, the warrant can be challenged on this ground in habeas corpus proceedings."

The government contends that because it conceded eligibility for suspension of deportation at the time of trial the Court is confined to the narrow issue whether the exercise of discretion by the Attorney General can be challenged. I do not feel that one can thus insulate the eligibility phase of the hearing from the charge of unfairness. The hearing on eligibility for suspension is tainted, ab initio, with unfairness, because evidence not of record was considered. But for that evidence it is wholly speculative whether the requisite finding would have been made. See Bridges v. Wixon, supra. The charge of lack of due process cannot be avoided by a subsequent attempt at com-

partmentalization. For the reason, therefore, that a fair hearing was not accorded plaintiff on the issue of eligibility for suspension of deportation, I feel that she is entitled to have the case remanded to the Immigration and Naturalization Service for a decision on the evidence on the record alone. Further evidence may be adduced by either party bearing on the issue.

Findings of fact and conclusions of law may be drawn in conformity herewith.