**UNITED STATES ex rel. CUEVAS DIAZ v. SHAUGHNESSY, District Director of Immigration and Naturalization at the Port of New York.**

No. 272, Docket 22708.

United States Court of Appeals
Second Circuit.

Argued June 3, 1953.

Decided July 15, 1953.

Herman Englander, New York City (Englander & Englander, New York City, on the brief), for appellant.

William J. Sexton, Asst. U. S. Atty., New York City (J. Edward Lumbard, U. S. Atty., and Lester Friedman, Atty., Immigration and Naturalization Service, U. S. Dept. of Justice, both of New York City, on the brief), for appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The relator, a native and national of Spain, has been ordered deported as a seaman who outstayed his shore leave of not to exceed 29 days granted him on May 31, 1949, while his ship was in port and is now in this country illegally. He first entered the country as a deserting seaman on August 3, 1944. As a result of proceedings at that time he was permitted to depart voluntarily and did depart on June 20, 1946. Since he has no legal defense to the present order of deportation, he has directed his efforts toward securing the discretionary relief of suspension of deportation placed by law in the hands of the At-

torney General or the latter's representative. A hearing officer denied his application, and that decision has been sustained by the Board of Immigration Appeals. In deciding the appeal, however, the Board "made use of ready information outside the record." It expressly declined to follow the decision in Alexiou v. McGrath, D.C.D.C., 101 F.Supp. 421, holding such course improper, but relied on a ruling by the Acting Attorney General in 1949 and its own previous ruling. A departmental regulation now permits the use of "confidential information." 8 CFR 244.3. This writ was designed to test the validity of such action by the Board, the relator here relying on the Alexiou case, and the respondent on the contrary authorities cited. Judge Ryan sustained the Government's position and dismissed the writ. This appeal followed.

Respondent, however, raises a preliminary question of relator's right to discretionary relief under the now existing law, with which we are constrained to agree, thus preventing our reaching the issue raised below. Relator did come within the terms of the previous statute, 8 U.S.C. § 155(c), enabling him to make the application addressed to the executive discretion. The Immigration and Nationality Act of 1952, 8 U.S.C. § 1101 et seq., was enacted on June 27, 1952, and became effective 180 days thereafter or on December 24, 1952. Laws 82d Cong., 2d Sess., c. 477, P.L. 414, § 407, U.S.Code Cong. and Adm. News 1952, p. 275, 8 U.S.C.A. § 1101 note. Sec. 244 of this Act, 8 U.S.C. § 1254, replaces the former provisions as to discretionary relief and substitutes other requirements with which, as relator concedes, he does not comply. Hence if the new Act governs, it definitely excludes him from consideration by the executive authorities for suspension of deportation. By the savings clauses of the Act many proceedings pending at the time it takes effect are preserved; yet it is specifically provided that an application for suspension of deportation under the prior statute "which is pending on the date of enactment of this Act" shall be regarded as a proceeding which

is continued within the meaning of the subsection in question. § 405(a), U.S.Code Cong. and Adm.News 1952, pp. 274, 275, 8 U.S.C.A. § 1101 note. It is thus clear, as the parties assume, that relator's application for such relief must have been pending on June 27, 1952, if his appeal is to be sustained.

 Respondent contends that no application for suspension of deportation was made until it was done orally by counsel at relator's deportation hearing on August 28, 1952. Although at that time relator's counsel accepted the statement that there was no previous application for such relief and although his petition for this writ, as well as respondent's return, so shows, he now says he was in error, due to his unfamiliarity with what had happened before. He places his reliance instead on a statement by the judge in the memorandum of decision that application was so made on August 14, 1950. But it seems wholly clear that it was the judge who was in error as to this. When relator found his presence in this country was again to be questioned he did seek to regularize it by filing with the Commissioner of Immigration and Naturalization a request for voluntary departure with or without pre-examination. But under the law this is not the same relief as here requested, and under departmental regulations different procedures and different forms are used. Thus relator made his 1950 application on Form I–255, which asks for "Permission to depart from the United States at my own expense in lieu of deportation"; and with this he filed General Information Form I–55, which is purely informational, giving facts required by the Government in connection with either the application for suspension of deportation or for voluntary departure and is not itself an application. Application for suspension of deportation because of serious economic detriment to a citizen wife or minor child (as here relied on) is made on other forms either before the deportation or at the deportation hearing, I–256, I–256A, if not made orally as here. See the departmental regulations, notably 8 CFR 242.41 and 242.54(d). It

is thus clear that no application for the relief now sought was pending at the time of the enactment of the new Act and hence relator is not now eligible for the discretionary relief he seeks.

Affirmed.