233 F.2d 705
 UNITED STATES of America, ex rel. Anastasios HINTOPOULOS and
Elizabeth Hintopoulos, Relators-Appellants,
v.
Edward J. SHAUGHNESSY, District Director of Immigration and
Naturalization at the Port of New York, Respondent-Appellee.
 No. 144, Docket 23809.
 United States Court of Appeals Second Circuit.
 Argued Oct. 10, 1955.
Decided May 9, 1956.
 
 Jay Nicholas Long, New York City, for relators-appellants.
 Teresa S. Reardon, Asst. U.S. Atty., S.D.N.Y., Jackson Heights, N.Y. (Paul W. Williams, U.S. Atty., S.D.N.Y., New York City, Roy Babitt, Atty., Immigration and Naturalization Service, New York City, on the brief), for respondent-appellee.
 Before FRANK, HINCKS and WATERMAN, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 This appeal from an order dismissing a writ of habeas corpus turns upon the validity of an order of the Board of Immigration Appeals denying the appellants' request for suspension of deportation.
 
 
 2
 The facts are substantially as follows. The appellants are husband and wife, both Greek citizens. Both were admitted to the United States as seamen, the wife at Newport News, Virginia, on July 4, 1951 and the husband at Baltimore, Maryland, on August 15, 1951. At the time the female entered the United States she was six months pregnant and journeyed to New York to seek medical advice where her husband joined her at the later date when his ship next arrived in the United States. Their child was born in the United States on November 11, 1951 and thus by reason of his nativity is an American citizen. On January 4, 1952, the appellants voluntarily disclosed their illegal presence and made application to the Immigration Service for suspension of deportation. On April 9, 1952, warrants issued for their arrest in deportation proceedings, and on May 29, 1952 they were accorded a hearing thereunder at Ellis Island. The Hearing Officer found them deportable for entry into the United States with intent to remain indefinitely without possession of immigration visas, and denied their application for suspension of deportation. The Board of Immigration Appeals affirmed the decision of the Hearing Officer in an opinion dated March 18, 1954. On May 5, 1954, the Board reiterated its conclusion in denying a motion to reopen the proceedings. Thereafter, the appellants were taken into custody for deportation and a writ of habeas corpus was issued on July 14, 1955. On August 1, 1955, the United States District Court for the Southern District of New York, per Dawson, J., 133 F.Supp. 433, dismissed the writ and upheld the decision of the Board as a proper exercise of the Attorney General's discretionary power to grant or deny the relief requested. The present appeal is prosecuted from the dismissal of the writ below.
 
 
 3
 On this appeal, as below, the appellants do not question their deportability. Their attack on the administrative order is confined to so much thereof as denied their request for suspension of deportation. As to this the applicable statute is the Immigration and Nationality Act of June 28, 1940, c. 439, § 20(c),[1] which amended 39 Stat. 889, which, so far as here pertinent, provides:
 
 
 4
 'In the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * suspend deportation of such alien * * * if he finds that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the * * * minor child of such deportable alien.'
 
 
 5
 It is clear that under this statute the 'good moral character' of the appellants for five years and resultant 'serious economic detriment to * * * (their) minor child' were essential qualifications for the eligibility of these appellants for suspension of their deportation. In the administrative proceedings it was found that both these qualifications existed and that the appellants were indeed eligible. Notwithstanding, the Attorney General, through the Board of Immigration Appeals as his administrative delegate, in the exercise of the discretion vested in him by the Act, refused to grant a suspension.
 
 
 6
 To determine the validity of that action we look first to the opinion of the Board of Immigration Appeals of March 18, 1954. In that opinion, its Board took note of the financial condition of the appellants and went on to say:
 
 
 7
 '* * * It is obvious that the American citizen infant child is dependent upon the alien parents for economic support, care and maintenance. Documentary and other evidence established good moral character for the requisite period. The aliens have no connection with subversive groups.'
 
 
 8
 It concluded its opinion with these two paragraphs:
 
 
 9
 'As stated above, we have, in the instant case, a family consisting of two alien parents illegally residing in the United States and one American citizen child, age about two and one-half years. These respondents have been in the United States for a period of less than three years. Both arrived in this country as seamen. They have no other dependents or close family ties here. The record indicates that the male respondent may be able to obtain work as a Greek seaman and earn about $85 monthly.
 
 
 10
 'Notwithstanding the fact that the family situation in the case before us is similar to the situation in the case last referred to by counsel, in which a decision was made in 1951; and notwithstanding the fact that the deportation of these respondents would result in a serious economic detriment to an American citizen infant child, the granting or withholding of maximum discretionary relief depends on the factors and merits in each individual case, and is a matter of administrative discretion. 1 We have carefully examined the facts and circumstances in the instant case and we find that the granting of the maximum relief is not warranted by the record in the case. The appeals will be dismissed. * * *' '1. (United States ex rel.) Weddeke v. Watkins (2 Cir.), 166 F.2d 369; and (United States ex rel.) Kaloudis v. Shaughnessy (2 Cir.), 180 F.2d 489.'
 
 
 11
 The emphasis which we have added to the second paragraph just quoted shows unmistakably that the Board recognized that the applicable hardship test of eligibility was 'a serious economic detriment to an American citizen,' which was the precise test of eligibility for suspension provided in the applicable statute from which we quote above. On that basis, it found that the appellants were in all respects eligible for suspension. But in the belief that the exercise of its discretion under the statute 'depends on the factors and events in each individual case' the Board denied suspension as 'not warranted by the record in this case.'
 
 
 12
 We see nothing in the opinion, or indeed in the underlying record, to suggest that the determination was arbitrary or based on irrelevant or improper considerations. We cannot say as a matter of law that if, as a result of the parents' deportation, the minor child shall be reared, say, in Athens instead of in Brooklyn, that the resulting economic detriment to the child-- which was recognized-- is a factor of sufficient gravity to withhold the deportation of aliens who had entered this country with intent to remain indefinitely, in violation of the immigration laws, less than a year before the decision of the Hearing Officer which first ordered their deportation. We conclude that under our former decisions which the Board cited in its March 18th opinion-- Weddeke and Kaloudis-- the Board's action would have been unassailable if the administrative proceedings had stopped there. That conclusion is further supported by United States ex rel. James v. Shaughnessy, 2 Cir., 202 F.2d 519; United States ex rel. Adel v. Shaughnessy, 2 Cir., 183 F.2d 371; Sleddens v. Shaughnessy, 2 Cir., 177 F.2d 363.
 
 
 13
 But thereafter the appellants made a motion to reopen the proceedings for reconsideration of the prior applications for suspension. This motion the Board denied with a short opinion dated May 5, 1954. In that opinion, it said:
 
 
 14
 'Counsel's motion sets forth no matters of which we were unaware at the time our previous decision was rendered. It is crystal clear that Congress intended to greatly restrict the granting of suspension of deportation by the change of phraseology which was used in Section 224(a) of the Immigration and Nationality Act (8 U.S.C.A. § 1254(a)) as well as the Congressional comment at the time this provision was enacted. We indicated in our previous order that the deportation of the respondents would result in a serious economic detriment to their citizen minor child, and we do not question that the respondents have established the statutory requirements for suspension of deportation under Section 19(c) of the Immigration Act of 1917, as amended.'
 
 
 15
 * * * * * *
 
 
 16
 'Upon our further review of the cases of the two respondents, we adhere to our previous decision that suspension of deportation should be denied as a matter of administrative discretion and counsel's motion will, therefore, be denied.'
 
 
 17
 By these two paragraphs the Board made it abundantly clear that it adhered to its previous holding that the appellants' eligibility for a suspension was controlled by the 1940 Act; that under that Act the appellants were indeed eligible; and that in the exercise of its discretion it denied the suspension applied for. Having thus stated that its decision was made in the exercise of its discretion, we see no room whatever for the argument that the Board had failed or refused to exercise its discretion. In this respect, the case here is distinguishable from Mastrapasqua v. Shaughnessy, 2 Cir., 180 F.2d 999, in which the Board had refused to exercise its discretion. And since the Board found the appellants eligible for a suspension under the eligibility standard of the 1940 Act, its decision was not in conflict with our decision in United States ex rel. Zacharias v. Shaughnessy, 221 F.2d 578.
 
 
 18
 The only remaining question is whether in its May opinion the reference to Section 244(a) of the Immigration and Nationality Act of 1952 indicates that in the formulation of its discretion the Board was improperly influenced by Congressional policy as manifested by the later Act. As to this, it will be noted that neither the 1940 Act nor the 1952 Act provide any indication of the factors which shall control the formulation of the discretion granted: under each, once the respective eligibility requirements are found to exist-- as they were here-- the Board has untrammeled discretion to grant or withhold a suspension. Only if the discretion is shown to have been formulated on arbitrary or illegal considerations may the courts interfere. United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489. This broad discretionary power was apparently granted in order to give the deportation provisions of the law some flexibility in cases involving more than usual hardship, the nature and gravity of which would vary with each case as it should thereafter arise. The appellants do not contend that the grant of discretion is unconstitutional for lack of specified standards governing its formulation. Such a contention, even if sound, would not help them. For if the grant of power were invalid, the appellants and all other hardship cases would stand confronted with rigid deportation provisions as were their predecessors before the law was liberalized.
 
 
 19
 Since the Board had this broad power (in the comparatively narrow field which comprises those found eligible for a suspension) we think that in the formulation of its discretion it might properly take into account among other factors its concept of Congressional policy as manifested in Section 244(a) of the 1952 Act. In United States ex rel. Kaloudis v. Shaughnessy, supra, 180 F.2d at page 491, we said:
 
 
 20
 '* * * The power of the Attorney General to suspend deportation is a dispensing power, like a judge's power to suspend the execution of a sentence, or the President's to pardon a convict. It is a matter of grace, over which courts have no review, unless-- as we are assuming-- it affirmatively appears that the denial has been actuated by considerations that Congress could not have intended to make relevant.'
 
 
 21
 Let us somewhat develop the analogy there suggested by posing the situation which may confront a judge when he comes to impose sentence on, say, a convicted narcotic peddler. He is besought to dispose of the case by suspension of sentence and imposition of probation as under the applicable law he has power to do. In the exercise of his discretion he refuses to suspend and imposes a sentence to be served. Surely the sentence imposed is not invalid because his discretion was to some extent expressly affected by prevalent contemporary opinion that the public interest required more rigorous treatment of narcotic violators, whether such opinion was disclosed in recent Acts of Congress stiffening the penalties for such violators or merely in the public press. Doubtless a just judge will not abdicate his powers to public clamor or even to legislative opinion which does not purport to control formulation of his discretionary powers. But a wise judge will not put forth judgments from an ivory tower shutting his eyes to contemporary mores and public opinion.
 
 
 22
 Our conclusion is not in conflict with Section 405 of the 1952 Act, 8 U.S.C.A. § 1101 note. That section provides that 'Nothing contained in this Act * * * shall be construed to affect * * * any * * * proceedings * * * brought * * * at the time this Act shall take effect; but as to all such * * * proceedings * * * the statutes * * * repealed by this Act are * * * hereby continued in force and effect.' (Emphasis supplied.) We think that 'nothing contained in this Act' means no operative provision of this Act such as the provision establishing the standard of eligibility. Cf. United States ex rel. Zacharias v. Shaughnessy, supra. That construction is required by the succeeding, antithetical, clause, 'but as to all such * * * proceedings * * * the statutes * * * repealed' are continued in effect. In other words, under Section 405 of the 1952 Act the appellants were entitled to have the application disposed of under the 1940 Act. And that right was fully accorded them. They were found eligible for suspension under the 1940 Act and the suspension was denied under the discretionary power created by the 1940 Act. The reference to Section 244(a) of the 1950 Act showed only that the Board considered its exercise of discretion to be consonant with the policy of that Act,-- not that the scope of its discretionary power was restricted by that Act.
 
 
 23
 Affirmed.
 
 
 24
 FRANK, Circuit Judge (dissenting).
 
 
 25
 When this court, on a petition for rehearing publishes a supplemental opinion which adheres to the previous decision, but on new grounds, the new opinion with its new rationale is invariably and correctly taken, by us and others, as reporting the basis of our decision. I think we must deal similarly with the Board. Accordingly, I think we must look to its second opinion, responsive to the motion for reconsideration, to learn the basis on which the Board refused to exercise its discretion favorably to appellants.
 
 
 26
 The Board's second opinion is set forth in full in the Appendix hereto. There the Board plainly stated, as follows, that it relied on Section 244(a) of the 1952 Act: 'It is crystal clear that Congress intended to greatly restrict the granting of suspension of deportation by the change of phraseology which was used in Section 244(a) of the Immigration and Nationality Act as well as the Congressional comment at the time this provision was enacted.'
 
 
 27
 Judge Dawson, in dismissing the habeas corpus writ, recognized that the Board took 'into account the new standard which was laid down by Congress,' and held that the Board, in so doing, acted properly.
 
 
 28
 Here the Board erred. The new statute narrowed the discretion of the Attorney General and thus of his delegate, the Board. Thus the Board did not feel free to exercise the discretion it had under the properly applicable legislation, i.e., the statute as it stood before the 1952 amendment. However, the new Act, as my colleagues concede, had no application to this case. Accordingly, it was precisely as if the Board, without relying on the amended Act, had declared that it would never grant discretionary relief unless deportation would 'result in exceptional and extremely unusual hardship to the alien, his spouse, parent or child.' Such a restriction by the Board of the breadth of its discretion was arbitrary and therefore illegal.
 
 
 29
 This case is like Mastrapasqua v. Shaughnessy, 2 Cir., 180 F.2d 999, 1002-1004. There, an Italian seaman, detained in this country during the war, sought the discretionary relief of pre-examination or, in the alternative, suspension of deportation. The Board of Immigration Appeals refused to exercise its discretion because Mastrapasqua was in a class of aliens (those in the United States solely for reasons connected with the war) which the Attorney General, in a prior case, had said should be denied discretionary relief. We held that the Board was not justified in so refusing to exercise its discretion in this class of cases, since the classification was irrational and capricious, and we ordered Mastrapasqua's release from custody unless the Board, within a reasonable time, exercised its discretion one way or the other, without reliance on any such limitation on its discretion.
 
 
 30
 My colleagues lean heavily on United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489, 491, which suggested that the Attorney General's discretionary power to suspend deportation might be analogized to the President's power to pardon a convict. It should be noted that the Mastrapasqua case was decided by us less than two weeks after we decided Kaloudis. As the two must therefore be read together, it cannot be argued that the earlier decision, Kaloudis, over-ruled the later, Mastrapasqua, or vice versa. Moreover, in Kaloudis, although we said that there the denial of discretionary relief rested on a ground that was not improper, we indicated that cases might arise where the discretionary power is exercised in disregard of implied limitations. See 180 F.2d at page 490.
 
 
 31
 Kaloudis did not say that the Board, in exercising its discretion, could apply a standard which Congress specifically said was not to be applied to cases, such as this, which come within the savings clause of Section 405 of the Immigration and Nationality Act of 1952, 66 Stat. 280.[1] In interpreting Section 405 in connection with the application of the pre-1952 test for determining eligibility of an alien for citizenship, the Supreme Court said, in United States v. Menasche, 348 U.S. 528, 535, 75 S.Ct. 513, 518, 99 L.Ed. 615 'The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws. The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress.'
 
 
 32
 In United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 221 F.2d 578, this court, adopting the liberal view of the savings clause set forth in Menasche, held that the eligibility of an alien who came within the clause, for the discretionary relief of voluntary departure, was to be determined under the pre-1952 statute. I think that the same considerations which caused us to so hold in Zacharias require that we now order the Board to exercise its discretion in determining whether to suspend the deportation of petitioners without regard to the new and more severe standard adopted by Congress in the 1952 Act.
 
 Appendix
 The Board's Second Opinion
 
 33
 'These cases are before us on counsel's motion to reopen the proceedings for reconsideration of the respondents' applications for suspension of deportation.
 
 
 34
 'The male respondent last entered the United States on August 15, 1951 and the female respondent on July 4, 1951. Both arrived as seamen and have been found deportable on the charge that they were immigrants at the time of entry and were not in possession of immigration visas. They have one child who was born in the United States during November 1951. On March 18, 1954, we dismissed the appeals of the respondents from the hearing officer's decision granting voluntary departure and denying suspension of deportation. After considering all the facts in the case at that time, we denied suspension of deportation as a matter of administrative discretion.
 
 
 35
 'Counsel's motion sets forth no matters of which we were unaware at the time our previous decision was rendered. It is crystal clear that Congress intended to greatly restrict the granting of suspension of deportation by the change of phraseology which was used in Section 244(a) of the Immigration and Nationality Act as well as the Congressional comment at the time this provision was enacted. We indicated in our previous order that the deportation of the respondents would result in a serious economic detriment to their citizen minor child, and we do not question that the respondents have established the statutory requirements for suspension of deportation under Section 19(c) of the Immigration Act of 1917, as amended.
 
 
 36
 'Counsel argues that the two court decisions cited in our previous order involved grounds for deportation specified in Section 19(d) of the Immigration Act of 1917, as amended. These cases were not within the purview of Section 19(d) although one alien had been convicted of incest and the other had been a member of the International Workers Order. Weddeke was not deportable because of his conviction and Kaloudis was not charged with being deportable because of his membership in the International Workers Order. In both cases, the decision of the court was predicated on the fact that, regardless of whether the aliens had established or could establish statutory eligibility, the question of whether suspension of deportation should be granted was entirely discretionary with the Attorney General and his decision was not reviewable by a court unless clearly arbitrary.
 
 
 37
 'upon our further review of the cases of the two respondents, we ahere to our previous decision that suspension of deportation should be denied as a matter of administrative discretion and counsel's motion will, therefore, be denied.
 
 
 38
 'Order: It is ordered that counsel's motion be and the same is hereby denied.'
 
 
 
 [1]
 Now 8 U.S.C.A. § 1254(a)
 
 
 [1]
 Section 405, in part, reads 'Nothing contained in this Act, unless specifically provided therein, shall be construed * * * to affect any prosecution, suit, action, or proceedings, civil or criminal, brought * * * at the time this Act shall take effect; but as to all such * * * proceedings * * *, the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect * * *. An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended, * * * shall be regarded as a proceeding within the meaning of this subsection.'