Petition of Jose Da Silva FERREIRA,
Petitioner-Appellant,

v.

Edward J. SHAUGHNESSY, As District
Director of Immigration and Naturalization for the District of New York,
Respondent-Appellee.

No. 95, Docket 24115.

United States Court of Appeals
Second Circuit.

Argued Dec. 14, 1956.

Decided Feb. 13, 1957.

Caputi & Caputi, New York City (Sebastian P. Caputi, of counsel; Robert R. Caputi, New York City, with him on the brief), for petitioner-appellant.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (Roy Babitt, Sp. Asst. U. S. Atty., and Harold J. Raby, Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The petitioner-appellant, Jose Da Silva Ferreira, appeals from an order of the District Court dismissing his petition for judicial review of a denial by the

Immigration and Naturalization Service of his application for suspension of deportation.

Ferreira is a fifty-nine-year-old citizen and native of Portugal. In 1948, he was admitted to the United States as a non-immigrant alien seaman for shore leave only. He was later discharged from his ship and remained illegally in this country as he had done on two previous occasions. Deportation proceedings were eventually instituted against him, and a hearing was conducted on October 30, 1952. At the hearing Ferreira applied for suspension of deportation under the Immigration Act of 1917, 39 Stat. 874, formerly 8 U.S.C. § 155(c), as amended. His application was received and denied; and it was ordered that he be deported. Ferreira then appealed to the Board of Immigration Appeals on the ground that the Hearing Officer had prejudiced the application, citing a statement by that Officer that there was insufficient evidence in the record on which to base a proper determination of eligibility for suspension of deportation. The Board ordered the proceedings reopened in order to permit the introduction of evidence on this question. At a new hearing on May 15, 1953, the appellant again applied under the 1917 Act for suspension of deportation. His application was denied, he unsuccessfully appealed to the Board, and was given until March 28, 1955 to depart voluntarily. Ferreira did not avail himself of this opportunity. Thereafter a warrant for his deportation issued.

On June 2, 1953, Ferreira was injured in the course of his employment as a laborer. He was subsequently granted an award by the Workmen's Compensation Board of the State of New York. He claims that he is entitled to certain of the benefits of that award only as long as he remains within the jurisdiction of the Compensation Board, i. e., within the State of New York. On May 17, 1955, subsequent to the issuance of the warrant for his deportation, Ferreira again moved for a reopening of proceedings to reconsider his application for suspension of deportation under the 1917 Act, or in the alternative, for leave to apply for such a suspension under the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq. He claimed eligibility for relief under section 244(a) (1) of the 1952 Act on the ground that he had been physically present in the United States for seven years since his last entrance in 1948; and that, because of the requirements of his compensation award, deportation would cause him exceptional and extremely unusual hardship. The Board of Immigration Appeals denied this motion. Upon receiving a notice to surrender for deportation, Ferreira instituted the present action in the District Court.

■ The suspension of his deportation order is available to petitioner only because Congress has enacted a statute providing for it; and petitioner concedes that we cannot review a proper exercise of administrative discretion denying suspension of deportation to him. See United States ex rel. Hintopoulos v. Shaughnessy, 2 Cir., 1956, 233 F.2d 705, 707–708. "The interest which an alien has in continued residence in this country is protected only so far as Congress may choose to protect it; Congress may direct that all shall go back, or that some shall go back and some may stay; and it may distinguish between the two by such tests as it thinks appropriate." United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489, 490, per L. Hand, Ch. J. Appellant asserts, however, that once Congress has enacted a statute providing for suspension of deportation, the Attorney General and the Immigration authorities must administer the statute in accordance with the underlying legislative purpose. The petitioner claims that as to him Acts of Congress have not been so administered. Thus he claims he has been unlawfully deprived of the opportunity of having his application for the suspension of his deportation entertained by the appropriate Hearing Officer and the Board of Immigration Appeals; and that the refusal of the Immigration authorities to reopen the proceedings in order to entertain his ap-

plication for suspension under the 1952 Act constitutes a denial of due process. His claim is based upon a construction of section 405(a) of the 1952 Act.[1]

█ Appellant says that section 405 (a) of the 1952 Act created a "cut-off" period for suspension applications between June 27, 1952, the date of enactment, and December 24, 1952, the date of taking effect, during which no valid application could be filed, either under the new or the old law. He says the provisions of the 1917 Act were not available because only applications pending on the date of *enactment* were "saved" by section 405(a) of the 1952 Act. He also says that no application could be validly filed under the 1952 Act before December 24, 1952, because that statute was inoperative until that date. Therefore, between June 27, 1952 and December 24, 1952, he claims a hiatus was created, during which the Immigration authorities were without jurisdiction to entertain an application for the suspension of deportation. His suggested construction would render null and void that part of the proceedings in which his original application was denied on October 30, 1952.

This statutory construction, if accepted, would have a disruptive impact upon the administration of the immigration laws and would impair the harmony of transition that Congress has sought to preserve while enacting new legislation in this area. Cf. United States v. Menasche, 1955, 348 U.S. 528, 531–535, 75 S.

Ct. 513, 99 L.Ed. 615. Moreover, we are reluctant to approve an interpretation that would withdraw the availability of suspension of deportation, even temporarily, inasmuch as "The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws." United States v. Menasche, supra, 1955, 348 U.S. at page 535, 75 S.Ct. at page 518. We construe section 405(a) differently than petitioner would have us construe it and find no difficulty in applying its language to the issue here. Since the 1952 Act was not to take effect until December 24, 1952, 180 days after its enactment, an application for suspension of deportation could not be preferred under it until its effective date. Therefore, *since there is no express statutory language to the contrary, we find that in this respect the 1917 Act was in force until December 24, 1952, and that the Immigration officials were empowered to entertain an application for suspension of deportation presented under that Act.*

█ Petitioner appears to maintain that his application could not have been legally entertained between June 27, 1952 and December 24, 1952, because he claims that there have been decisions using the standards of the 1952 Act in adjudicating upon petitions heard between June 27 and

---

1. Section 405(a) is a "savings clause," and, insofar as relevant, reads as follows: "(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [sic], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * * An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended, * * * which is pending on the date of enactment of this Act, shall be regarded as a proceeding within the meaning of this subsection." 8 U.S. C.A. § 1101 note.

December 24.[2] These decisions are irrelevant to the issue here because we are here holding only that the Special Hearing Officer on October 30, 1952, had the *procedural* authority to entertain the petitioner's application for suspension on that date. If he, and subsequently the Board of Immigration Appeals, erred in applying the proper substantive law to decision-making, the error, if any, was in favor of the petitioner, because the more lenient standards[3] of the 1917 Act were invoked in denying his application. Therefore the petitioner cannot complain that he was deprived of an authorized opportunity to seek to have his deportation suspended by discretionary administrative action. The procedure was available to him under the provisions of the 1917 Act. Cf. Foradis v. Brownell, D.C.Cir. decided Jan. 17, 1957, 242 F.2d 218.

Because we find that the Immigration authorities were empowered to consider the petitioner's original application in 1952, we can discern no error in their subsequent disposition of his case. Indeed, the petitioner has been accorded the benefits of every procedural delay and is still within this country almost nine years after the elapse of his permissible stay in 1948. At the time of its most recent decision denying reconsideration of the petitioner's application, the Board of Immigration Appeals was fully apprised of his injury and of the terms of the compensation award. As indicated above, it is not our function to review such a routine exercise of administration discretion.

Judgment affirmed.

**2.** See, e. g., In the Matter of S—, 5 I. & N.Dec. 467 (1953). In United States ex rel. Hintopoulos v. Shaughnessy, 2 Cir., 1956, 233 F.2d 705, certiorari granted 1956, 1 L.Ed.2d 45, 352 U.S. 819, 77 S.Ct. 53, this court held that it was not improper for the Board of Immigration Appeals to be influenced by the policy manifested in the 1952 Act in the formulation of its discretion exercised in denying an application for suspension of

deportation filed between June 27, 1952 and December 24, 1952. The question of what substantive law may be considered in passing upon the *merits* of applications made during that period is not raised by the case at bar.

**3.** See United States ex rel. Hintopoulos v. Shaughnessy, 2 Cir., 1956, 233 F.2d 705, 708.