Bruce G. BARBER, District Director, Immigration and Naturalization Service, San Francisco, Appellant,

v.

LAL SINGH, Appellee.

No. 15300.

United States Court of Appeals
Ninth Circuit.

June 24, 1957.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellant.

Milton T. Simmons, San Francisco, Cal., for appellee.

Before STEPHENS, POPE and HAMLEY, Circuit Judges.

STEPHENS, Circuit Judge.

Appellee is an applicant for suspension of deportation. It is conceded that he is subject to deportation, and the issue before us is the correctness of the District Court's order holding that his eligibility for suspension of deportation should be determined under the provisions of the Immigration Act of 1917[1] rather than the Immigration Act of 1952.[2]

---

1. 8 U.S.C.A. § 155(c); Section 19(c) of the Immigration Act of 1917.

2. 8 U.S.C.A. § 1254(a) (1) of the Immigration and Nationality Act of 1952.

Appellee first entered this country in 1925. He was convicted of violation of the Passport Act of 1918 and deported, but in 1927 he again illegally entered the United States. In 1935 he stated under oath to an examining officer of the Immigration and Naturalization Service that he had entered this country only once. In May, 1938, a warrant of arrest pursuant to deportation proceedings was issued, but it was returned unserved. In 1949, he made application for Registry of an Alien in which he stated he had entered this country only once, in 1923, and had never been deported. This application was denied when it was learned of his prior deportation. In 1950 a warrant of arrest in a deportation proceeding was issued charging petitioner with being in this country in violation of the Immigration Act of 1924. A hearing was held before a Special Inquiry Officer on February 8, 1954. On April 12, 1955, appellee made application for suspension under § 244 of the Immigration and Nationality Act of 1952, and a second hearing in deportation proceedings was also held on that date. The Special Inquiry Officer found that he was deportable and ordered his deportation; he also found that he was not of good moral character for *seven years* before the application for suspension of deportation, and therefore denied the application. But the Special Inquiry Officer did find that he was of good moral character for the last *five years*, and thus granted him the privilege of voluntary departure. 8 U. S.C.A. §§ 1254(e), 1101(f). The Board of Immigration Appeals affirmed the order of the Special Inquiry Officer and held that appellee's application for suspension of deportation made April 12, 1955, had to be considered under the 1952 Act, and under that Act he did not qualify for consideration of suspension of deportation.

Appellee brought this *habeas corpus* proceeding [3] in the District Court arguing that by virtue of the Savings Clause

in the 1952 Act, Section 405(a), note to U.S.C.A. § 1101,[4] that he was entitled to have his *eligibility* for discretionary suspension considered under the 1917 Act. The District Court agreed with appellee, basing its decision on the fact that the warrant of arrest was issued in 1950, prior to the 1952 Act.

## The Appeal

Appellee is not eligible for consideration for discretionary suspension of deportation if the 1952 Act is applicable since the Special Inquiry Officer held that he was not of good moral character for seven years before the application was filed. But under the 1917 Act, appellee would be eligible for consideration of discretionary suspension of deportation since under that law, he meets the *five* year requirement of good moral character.

The Savings Clause provides:

405(a)

"Nothing contained in this Act [this chapter], unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act [this chapter] shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act [this chapter] shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [so in original; probably should read 'statuses'], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of stat-

---

**3.** Appellant questions the propriety of appellee bringing *habeas corpus* rather than an action for declaratory judgment.

**4.** 66 Stat. 280, 8 U.S.C.A. § 1101 note.

utes repealed by this Act [this chapter] are, unless otherwise specifically provided therein, hereby continued in force and effect. When an immigrant, in possession of an unexpired immigrant visa issued prior to the effective date of this Act [this chapter], makes application for admission, his admissibility shall be determined under the provisions of law in effect on the date of the issuance of such visa. An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended [former section 155 of this title], or for adjustment of status under section 4 of the Displaced Persons Act of 1948, as amended [section 1953 of Appendix to Title 50, War and National Defense], which is pending on the date of enactment of this Act [June 27, 1952], shall be regarded as a proceeding within the meaning of this subsection."

This Court, in Aure v. United States, 9 Cir., 225 F.2d 88, held that no affirmative action need be taken by one claiming the benefits of the Savings Clause in order to preserve those benefits under that clause, and the test was whether the benefit claimed was a substantive right or a mere procedural one. In United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 221 F.2d 578, it was held that in a deportation proceeding which began with a warrant of arrest served after 1952, eligibility for voluntary departure should be determined under the prior law, since the application for voluntary departure related back to an application for an immigrant visa filed by petitioner's wife some three months before the effective date of the 1952 Act. In Shintaro Miyagi v. Brownell, 97 U.S.App. D.C. 18, 227 F.2d 33, 35, it was held that the 1917 Act was applicable, although an alien had not formally applied for suspension of deportation before the 1952 Act was enacted, but had filed a motion for reconsideration and as a result of such motion, the original order and warrant of deportation were withdrawn, and the hearing was "reopened for the reception of such application for relief from deportation as may be made and for further appropriate proceedings in connection therewith." In Ferreira v. Shaughnessy, 2 Cir., 1957, 241 F.2d 617, it was held that under the Savings Clause of the 1952 Act, an application for suspension of deportation filed between the date of the enactment and the effective date of the 1952 Act should be considered under the prior 1917 Act. It was not necessary for decision in Ferreira to determine the status of an application filed *after* the *effective* date of the 1952 Act. Foradis v. Brownell, D.C.Cir., 1957, 242 F.2d 218, involved an application for suspension of deportation filed *subsequent* to the date of *enactment* but prior to the *effective* date of the 1952 Act. It was therein held that the 1917 Act was applicable, the Court referring to United States v. Menasche, 348 U.S. 528, 75 S. Ct. 513, 99 L.Ed. 615, where it was held that a petition for naturalization filed *subsequent to the effective date* of the 1952 Act (the situation in the instant case) was to be governed by the 1940 Act, in a case in which the alien had filed his declaration of intention under the latter. We find further support for the result reached in Ferreira and Foradis in House Report No. 1365, which was prepared by the House Committee on the Judiciary explaining in detail H. R. 5678, which subsequently became the Immigration and Nationality Act of 1952. The report states:

"Section 405 contains the saving clauses. It is understood by the committee that an application for suspension of deportation under section 19(c) of the Immigration Act of 1917, as amended, or an application for adjustment of status under section 4 of the Displaced Persons Act of 1948, as amended which is pending on the *effective* date of this act, shall be regarded as a proceeding within the meaning of sub-

section (a) of this section." (Emphasis supplied.)

See Vol. 2, U. S. Code Congressional and Administrative News, 1952, p. 1750.

■■ The Savings Clause reads "enactment" rather than "effective" date, apparently caused through inadvertence in drafting. In the instant case we have the situation of a warrant issued and served in 1950, hearings held in ˉ ⁱ54 and 1955, and an application for suspension of deportation filed in 1955. We affirm the holding of the District Court that appellee's eligibility for consideration of suspension of deportation should be considered under the 1917 Act. First, the mere fact that the last sentence of 405(a) states that an application for suspension of deportation pending on the date of enactment (which we believe should read effective date) shall be regarded as a proceeding within the meaning of 405(a) does not necessarily limit the meaning of "proceedings" as used in the earlier portion of 405(a). A somewhat similar situation was present in United States v. Menasche, 348 U.S. 528, 536, 75 S.Ct. 513, 518, involving § 405 (b), note to 8 U.S.C.A. § 1101, which states that a petition for naturalization previously filed pending at the time the Act takes effect is to be heard and determined according to the law in effect when the petition is filed. The Supreme Court in Menasche stated:

> "The slight negative implication derived from the fact that § 405(b) applies to *pending* petitions for naturalization, and not to those filed after the effective date of the new Act, is overcome by the broad sweep of § 405(a) and its dirction that prior law applies unless the Act 'otherwise *specifically* provide[s].'"

We are also equally assured that our conclusion herein is correct by a further point argued by appellee. Prior to the 1952 Act an alien who believed that he was subject to deportation *and against whom deportation proceedings had not been instituted* by the issuance of a warrant of arrest could voluntarily submit himself to the jurisdiction of the Immigration and Naturalization Service and make written application for suspension of deportation. See 8 C.F.R. Aliens and Nationality, 1949 Edition, § 150.10, p. 113. Under the law prior to the 1952 Act, an alien who had instituted against him deportation proceedings could at any time *during the hearing* apply for suspension of deportation under section 19 (c) of the 1917 Act. See 8 C.F.R. Aliens and Nationality, 1949 Edition, § 150.6 (g), p. 110. Thus, an alien against whom a warrant of deportation had been issued (the situation of appellee) could *not* apply for suspension of deportation except during the deportation hearings. The hearings in the instant case did not take place until 1954 and 1955. We conclude, therefore, that the last sentence of 405(a) was placed in the Savings Clause to enable those aliens who had applied for suspension of deportation but against whom deportation proceedings had not been commenced, to retain their rights under the 1917 Act.[5] Appellee in the instant case had a proceeding pending against him when the 1952 Act became effective, and we hold that as a part of that proceeding he had the right to have his eligibility for suspension determined under the Act of 1917. De La Rama S.S. Co. v. United States, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422; Matsuo v. Dulles, D.C., 133 F.Supp. 711; Aure v. United States, 9 Cir., 225 F.2d 88.

Judgment affirmed.

---

5. Search of Vol. 98, Congressional Record, fails to disclose any contrary interpretation given or advanced by Congress during the debates on the 1952 Act.