**Arsene KAVOUKDJIAN, Plaintiff,**

v.

**William P. ROGERS, Attorney General of the United States of America, and Frank C. Hagerty, District Director, Immigration and Naturalization Service of the United States of America, Defendants.**

**Civ. A. No. 2364.**

United States District Court
D. Rhode Island.
April 20, 1960.

Aram A. Arabian, John P. Bourcier, Providence, R. I., for plaintiff.

Joseph Mainelli, U. S. Atty., Samuel S. Tanzi, Asst. U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

In this action the plaintiff seeks a declaratory judgment as to his status under the immigration laws. More specifically, he seeks a declaration that his application for suspension of deportation is governed by the provisions of 8 U.S.C.A. § 1254(a) (1) [1] and a determination of "his right to seek cancellation of deporta-

tion upon the facts of his case." The plaintiff is presently subject to a valid and final order of deportation, the execution of which was restrained by me on June 25, 1958 pending the determination of the merits of this action.

Plaintiff in his amended complaint alleges in substance that he entered the United States on April 13, 1950 as a visitor for pleasure until July 12, 1950; that his arrest and deportation were ordered on February 3, 1956 on the ground that he had remained longer in the United States than permitted by the immigration laws; that since then he has unsuccessfully sought Congressional assistance to establish his status as an alien admitted to the United States for permanent residence; that under the provisions of 8 U.S.C.A. § 1254(a) (1) he is now entitled to apply to the Attorney General for adjustment of his status to that of an alien lawfully admitted for permanent residence and that the Attorney General may further suspend said order of deportation; that the defendant contends he is not entitled to apply for such relief; that it was decided on May 22, 1953 that plaintiff did qualify for relief under the applicable statutes; that his deportation was suspended pursuant to law and to said decision; that Congress took no action on any such deportation cases in 1954 or thereafter; that the present law provides that suspension of deportation shall be automatic unless Congress votes by resolution that it does not favor the suspen-

---

[1]. This subsection provides as follows:

"(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—

"(1) applies to the Attorney General within five years after the effective date of this chapter for suspension of deportation; last entered the United States more than two years prior to June 27, 1952; is deportable under any law of the United States and is not a member of a class of aliens whose deportation could not have been suspended by reason of section 19(d) of the Immigration Act of 1917, as amended; and has been physi-

cally present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child, who is a citizen or an alien lawfully admitted for permanent residence;"

This subsection also appears as § 244 (a) (1) of the Immigration and Naturalization Act of 1952, and will be hereinafter sometimes referred to as § 244(a) (1) of the 1952 Act.

sion· of deportation; that plaintiff fully qualifies for relief under 8 U.S.C.A. § 1254(a) (1); and that the instant case and facts warrant suspension of deportation. The amended complaint concludes with a prayer that this Court declare that the rights of plaintiff to apply for suspension of deportation are governed by the provisions of said section 1254(a) (1) and that the Court adjudicate plaintiff's status and right to seek cancellation of deportation upon the facts of this case by the pertinent applicable law.

The defendant,[2] after filing his answer, moved for summary judgment on the ground that there is no genuine issue as to any material fact in this action and that he is entitled to judgment as a matter of law. During the hearing on this motion the defendant introduced into evidence the full administrative file of the Immigration and Naturalization Service relating to the plaintiff, including verbatim transcripts of the various administrative hearings hereinafter discussed.

At the outset it is to be noted that there is no genuine issue as to any material fact. The only issue before me is an issue of law, the plaintiff contending that the Immigration and Naturalization Service has erroneously applied the law to the facts as established. In short, the plaintiff contends that his eligibility for suspension of deportation with adjustment of status should have been determined in accordance with the provisions of § 244(a) (1) of the 1952 Act, rather than in accordance with the provisions of § 19(c) of the Immigration Act of 1917.

Plaintiff, a native of Turkey and a citizen of France, entered the United States at the port of New York on April 13, 1950. He was admitted as a visitor for pleasure until July 12, 1950 under § 3(2) of the Immigration and Naturalization Act of 1924[*]. On June 7, 1950 he was granted an extension of stay until January 13, 1951. On November 5, 1950 he was married to a citizen of the United States.

On February 9, 1951 a warrant of arrest was served on the plaintiff charging him with violation of the Immigration Act of 1917 in that he had remained in the United States as a visitor for a longer time than was permitted under said Act or the regulations promulgated thereunder. After due notice, the plaintiff was given a hearing on said charge before an examining officer of the Immigration and Naturalization Service on May 17, 1951 at Providence, Rhode Island. The plaintiff was represented by counsel at this hearing and during all the proceedings subsequent thereto. Prior to this hearing, the plaintiff had .filed an application for suspension of deportation under the provisions of § 19(c) of the 1917 Act, as amended, 8 U.S.C.A. § 155 (c), (1946 ed.Supp. V).[3] In this applica-

2. Although the plaintiff originally joined the Attorney General of the United States of America as a party defendant, personal jurisdiction over him was never obtained; and upon motion duly made, this action was dismissed as to him on September 15, 1958. Thus the District Director is the sole defendant here.

* Now 8 U.S.C.A. § 1101(a) (15) (B).

3. This subsection provides in pertinent part as follows:
"(c) In the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * (2) suspend deportation of such alien if he is not ineligible for naturalization or if ineligible, such ineligibility is solely by reason of his race, if he finds (a) that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien; * * *. If the deportation of any alien is suspended under the provisions of this subsection for more than six months, a complete and detailed statement of the facts and pertinent provisions of law in the case shall· be reported to the Congress with the reasons for such suspension. These reports shall be submitted on the 1st and 15th day of each calendar month in which Congress is in session. If during the session of the Congress at which a case is reported, or prior to the close of the session of the Congress next following the session at which a case is reported, the Congress

tion, executed March 7, 1951, the plaintiff requested that his deportation be suspended under the provisions of subsection 19(c) (2) of the Immigration Act of 1917 on the ground that his deportation would result in serious economic detriment to his wife. Both plaintiff and his wife testified at this hearing in support of his application. Subsequent to said hearing and prior to the rendition of decision by the examining officer, it was ascertained by the Immigration and Naturalization Service that the plaintiff's wife had instituted divorce proceedings against him in the Superior Court of the State of Rhode Island on May 29, 1951.

As a result of this discovery a new hearing upon said warrant of arrest, after due notice to the plaintiff, was held on November 30, 1951. At this hearing the plaintiff again applied for suspension of deportation and, in the alternative, for the privilege of voluntary departure. At his request he was permitted to amend his application for suspension so that it would be based upon the ground that his deportation would result in serious economic detriment to his mother. At the conclusion of the testimony, said hearing was continued to January 30, 1952, at which time the plaintiff's mother testified in support of said application. Upon the completion of her testimony the hearing officer rendered a decision wherein he denied the plaintiff's application for suspension on the ground that it did not appear that plaintiff's deportation would result in serious economic detriment to his mother. He was therefore ordered to depart from the United States.

The plaintiff filed exceptions to this decision. Said decision was thereafter reviewed by the Assistant Commissioner of Immigration who on April 29, 1952 approved the findings of the hearing officer but granted the plaintiff the privilege of voluntary departure. From this decision, the plaintiff claimed an appeal to the Board of Immigration Appeals which on August 8, 1952 ordered that the proceedings be re-opened to receive further evidence on the question of whether the plaintiff's deportation would result in serious economic detriment to his mother.

Pursuant to this order, further hearings on plaintiff's application were held in Boston, Massachusetts on December 3, 1952 and on April 30, 1953. On May 22, 1953 the special inquiry officer who conducted said hearings found in favor of the plaintiff and ordered that his deportation be suspended under the provisions of subsection 19(c) (2) of the Immigration Act of 1917. Under the provisions of said subsection 19(c) (2), Congressional approval of such suspension was required to make it effective. Congress, after its submission for approval, failed to approve it within the specified time. The plaintiff was notified to this effect on February 7, 1955 and was given until March 1, 1955 to depart voluntarily from the United States. Prior to March 1, 1955 and thereafter, the plaintiff made repeated requests for extensions of time in which to depart, all of which were granted. The last of said extensions expired on February 1, 1956. The plaintiff having failed to depart by said date, a warrant for his arrest and deportation was issued on February 3, 1956. The execution of this warrant was then stayed pending action by Congress on successive private bills for the relief of the plaintiff. These bills failed of passage in 1957 and 1958, respectively, and on April 23, 1958 the plaintiff was directed to report for deportation on May 28, 1958. The instant action followed and further proceedings for his deportation were stayed by me as hereinabove indicated.

passes a concurrent resolution stating in substance that it favors the suspension of such deportation, the Attorney General shall cancel deportation proceedings. If prior to the close of the session of the Congress next following the session at which a case is reported, the Congress does not pass such a concurrent resolution, the Attorney General shall thereupon deport such alien in the manner provided by law."

No application for suspension of deportation under the provisions of said § 244(a) (1) of the 1952 Act was ever filed by the plaintiff while said subsection was in force and effect, said subsection having expired by its terms five years after December 24, 1952 (the effective date of the 1952 Act). Furthermore, it is clear that the merits of the plaintiff's application were considered at the administrative level in the light of the standards set forth in the 1917 Act. Although the ultimate administrative finding was favorable to the plaintiff, Congressional approval of suspension was not obtained and such approval was by the terms of the 1917 Act a requisite condition precedent to the suspension of deportation thereunder.[4] It is undisputed that the 1952 Act provided for a different procedure in this respect; under subsection 244(b) thereof,[5] a suspension of deportation by the Attorney General pursuant to the authority of § 244(a) (1) of said Act became final unless during the session of Congress at which a case of suspension was reported, or prior to the close of the session of Congress next following the session at which such case was reported, either the Senate or the House passed a resolution stating in substance that it did not favor said suspension of deportation. The plaintiff, in effect, contends that this test is properly applicable to him, and that having obtained a favorable administrative decision on his application subsequent to December 24, 1952, that decision should conclusively determine his status in the absence of a subsequent express disapproval by either the Senate or the House.

■ In my opinion this contention is without merit. If it were sustained he would have the benefit of administrative action taken under the comparatively lenient standards of the 1917 Act without the accompanying disadvantage of the explicit requirement of affirmative Congressional approval under said Act; and he would also avoid the more stringent administrative standards prescribed by the 1952 Act while enjoying the benefits of the more lenient rule as to Congressional action provided by said Act. Apart from the logical difficulties encountered in attempting to justify such a conclusion, it is clear that Congress never intended said Acts to have such an effect or to operate in such a manner.

Subsection 405(a) of the 1952 Act, 8 U.S.C.A. § 1101 note, the "Savings Clause", so-called, provides as follows:

"(a) Nothing contained in this Act, * * * unless otherwise specifically provided therein, shall be construed to affect the validity of any * * * proceeding which shall be valid at the time this Act * * * shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or

4. See § 19(c) (2) of the 1917 Act, quoted in footnote 3, supra.

5. This subsection, which appears as 8 U.S. C.A. § 1254(b), provides in pertinent part as follows:

"(b) Upon application by any alien who is found by the Attorney General to meet the requirements of paragraphs (1), (2), or (3) of subsection (a) of this section, the Attorney General may in his discretion suspend deportation of such alien. If the deportation of any alien is suspended under the provisions of this subsection, a complete and detailed statement of the facts and pertinent provisions of law in the case shall be reported to the Congress with the reasons for such suspension. Such reports shall be submitted on the first and fifteenth day of each calendar month in which Congress is in session. If during the session of Congress at which a case is reported, or, prior to the close of the session of the Congress next following the session at which a case is reported, either the Senate or the House of Representatives passes a resolution stating in substance that it does not favor the suspension of such deportation, the Attorney General shall thereupon deport such alien or authorize the alien's voluntary departure at his own expense under the order of deportation in the manner provided by law. If neither the Senate nor the House of Representatives shall, within the time above specified, pass such a resolution, the Attorney General shall cancel deportation proceedings. * * *."

any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act * * * shall take effect; * * * An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended * * * shall be regarded as a proceeding within the meaning of this subsection."

This subsection has consistently been held to mean that where, as here, the application for suspension was filed prior to the effective date of the 1952 Act, section 19 of the 1917 Act continues to govern the proceedings involving such application. United States ex rel. Hintopoulos v. Shaughnessy, 1957, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652; United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 261 note 1, 74 S.Ct. 499, 98 L.Ed. 681; United States ex rel. Bruno v. Sweet, 8 Cir., 1956, 235 F.2d 801, 803; cf. United States v. Cunha, 1 Cir., 1954, 209 F.2d 326, 328–329. See generally, H.R.Rep. No. 1365, 82d Cong., 2d session (1952), 2 U.S.Code Cong. & Ad. News 1952, pp. 1653, 1750. And this is true even though the deportation hearing was re-opened after the effective date of the 1952 Act. Ferreira v. Shaughnessy, 2 Cir., 1957, 241 F.2d 617; Miyagi v. Brownell, D.C.Cir., 1955, 227 F.2d 33; cf. Barber v. Lal Singh, 9 Cir., 1957, 247 F.2d 213.

In my opinion the plaintiff's application for suspension of deportation was governed by the provisions of subsection 19(c) of the 1917 Act. Since Congress failed to pass the requisite concurrent resolution stating in substance that it favored said suspension, the plaintiff is properly subject to deportation. No application for suspension having ever been filed under said subsection 244(a) (1) of the 1952 Act, said subsection was not applicable to the plaintiff.

The defendant's motion for summary judgment is granted. An order will be entered dismissing this action and vacating the restraining order entered herein on June 25, 1958.